W. R. Byrd v. City of Dallas et al.

No. 5011. Decided May 23, 1928.
(6 S. W., 2d Series, 738.)

*Claude C. Westerfield* and *V. A. Collins,* for appellant.

The court erred in denying plaintiff an injunction and in thereby holding that the payment of pensions out of the general revenues of the City of Dallas, obtained by taxation, is not in violation of Article 3, Section 51, of the Constitution of Texas. Bexar County v. Linden, 110 Texas, 339; State v. Zeigenheim, 144 Mo., 283; State, ex rel. v. Kimmel, 165 S. W., 1067; Aetna F. Ins. Co. v. Jones, 13 L. R. A. (N. S.), 1147.

A policeman or a fireman in the employ of the City of Dallas on a stipulated salary, and who takes the oath of office required by the Constitution of Texas, is a public officer under the laws of Texas and comes within the inhibition of the Constitution, which inhibits the "granting of any extra compensation, fee or allowance to a public officer, agent, servant and contractor after the services have been rendered or contract entered into."

Sanner v. State, 2 Texas App., 458; City of Galveston v. Hemmis, 73 Texas, 559; Rusher v. City of Dallas, 83 Texas, 151; Proctor v. Blackburn, 67 S. W., 548; Penal Code, 1925, art. 346; Ex Parte Preston, 161 S. W., 116; Turner v. Cross, 83 Texas, 218; Hand v. Cole, 12 S. W., 922; Wright v. City of Hartford, 50 Conn., 541.

The policemen and firemen are public officers, agents and servants of the City of Dallas and are employed during good behavior at a stipulated salary and are paid at the end of each month, that to allow said persons a pension, would be allowing extra compensation, fee or allowance for services already performed or rendered when there was no pre-existing law allowing said compensation, etc., contrary to the Constitution. Frisbie v. U. S., 157 U. S., 160; 30 Cyc., 1366; Dallas County v. Lively, 167 S. W., 219; Potter v. Fletcher, 138 N. Y. Supp., 559; Mahon v. Board of Education, 89 Am. St., 810.

Policemen and firemen are individuals working for the City of Dallas on a stipulated salary per month and are paid at the end of each month, and a pension is a bounty—gratuity or gift out of public funds and is inhibited by the Constitution of Texas, art. 16, sec. 6; art. 8, sec. 3.

The policemen and firemen of the City of Dallas are employed during good behavior at a stipulated salary per month, which is paid at the end of each month, to allow said parties a pension by reason of being in the service 20 years or more, when the law had only been effective for a short time, would be giving said persons a right, claim or demand against the City of Dallas at a time when none existed, in other words, said law would be retroactive or retrospective, and in direct conflict with the Constitution. Const., art. 1, sec. 16; Mellinger v. City of Houston, 68 Texas, 42; Insurance Co. v. Flynn, 38 Mo., 484; Rockwall County v. Kaufman, 69 Texas, 174; State v. Zeigenheim, 144 Mo., 283.

*Jas. J. Collins, Hugh S. Grady, W. H. Knight* and *H. P. Kucera,* for appellees.

The payment of pensions by a municipal corporation to policemen and firemen after twenty years' service in either of the departments, or upon disablement and incapacity for the duties as authorized by the state law and the ordinances of the City of Dallas is not in contravention to the Constitution of the state of Texas, and more especially not in contravention of Article 3, Section 5; Article 3, Section 52; Article 3, Section 53; Article 8, Section 3; Article 16, Section 6; Article 3, Section 44 of the state Constitution. Article 6229 to Article 6243 of the Revised 1925 Civil Statutes; State v. Love, 131 N. W., 196, 34 L. R. A. (N. S.), 607; Commonwealth v. Walton, 38 Atl., 970; Whitehead v. Davis, 209 Pac., 1008; Jackson v. Otis, 225 Pac., 890; O'Dea v. Cook, 169 Pac., 366; Cobbs v. Home Insurance Co., 91 So., 627; Kroner v. Abbott, 113 N. E., 696; 5 McQuillan on Municipal Corporations, paragraph 2422; 1 Dillon on Municipal Corporations, 5th Ed., paragraphs 105 and 430; Trustees v. Roome, 93 N. Y., 313; 19 Ruling Case Law, page 726, Section 33; 43 Corpus Juris, page 842, Section 1492.

The policemen, firemen and fire alarm operators of the City of Dallas, being employed during good behavior, a statute authorizing the pensioning of such employees after twenty years' continuous service in either of the departments, or upon becoming disabled in line of duty for further service, becomes a part of their contract of employment and is not retroactive within the prohibition of the state constitution. State v. Love, 34 L. R. A., 607; Article 14, Section 34, Charter of the City of Dallas as amended in 1916; Gastring v. Sovereign Camp W. O. W., 278 S. W., 310; O'Dea v.

Cook, 169 Pac., 366; Commonwealth v. Walton, 38 Atl., 970; Kroner v. Abbott, 113 N. E., 696; Articles 6229 to 6243, inc., Revised 1925 Civil Statutes.

Mr. Judge SPEER delivered the opinion of the Commission of Appeals, Section B.

This question is before us upon the following certificate from the Fifth District:

"Appellant, W. R. Byrd, brought an injunction suit against appellees, the City of Dallas and the Board of Trustees of the Firemen, Policemen and Fire Alarm Operator's Pension Fund to enjoin them from paying out pensions to Louis W. Brown, Sam Duncan, Theo Harrison, John W. Ryan and J. H. Tanner, retired policemen, and T. A. Myers, retired chief of the Dallas Fire Department, as authorized under the charter of the City of Dallas and the pension laws of the State enacted by the Legislature in 1919.

"The suit is prosecuted on the theory that Chapter 10 of the General Laws of Texas, enacted at the regular session of the 36th Legislature, commonly known as the 'City Pension Laws,' is unconstitutional; and that the provisions of the Charter of the City of Dallas, authorizing such pensions, and the ordinances, substantially the same as the said legislative enactment, are unconstitutional. The provisions of Chapter 10 of the acts at the regular session of the 36th Legislature have been carried into Chapter 1 of Title 109 of the Revised Statutes of 1925, and constitute Articles 6229 to and including Article 6243.

"The City of Dallas in 1916, prior to the Legislative enactment, passed an ordinance with substantially the same provisions as the said legislative enactment. On December 7th, 1921, ordinances were passed by the City of Dallas substantially the same as the said State enactment, except that the number of trustees is increased by adding thereto chiefs of the Police and Fire Departments, and there is appropriated from the general revenues of the City each year a sum of money equal to one per cent of the salaries of all those who could become, under the terms of the ordinance, beneficiaries of the pension fund. Previous to the passage of these ordinances, there had been submitted to the qualified voters of the City of Dallas, apparently authorized by Article 6242, *supra,* the question as to whether the governing body of the City of Dallas should be empowered to appropriate, from the public revenues each year, for the purpose of augmenting the pension fund, an amount of

money not less than one per cent, nor greater than two per cent, of the salaries of those entitled to become beneficiaries of such fund. At an election regularly held for this purpose, a majority of those voting recorded themselves in favor of the appropriation, and it was in pursuance of the authority thus granted that an appropriation from the general revenues of the city, equal to said one per cent, has been made each subsequent year. The pension fund of the City of Dallas therefore consists of the fund authorized by the said legislative enactment and of the said one per cent authorized by ordinances of the City of Dallas. The pensioners named in appellant's petition for injunction are each being paid monthly fifty per cent of the salary such pensioner was drawing at the time he was 'retired and placed on the pension list. All employees of the City of Dallas, who may be beneficiaries of this fund, are appointed and hold their position during good behavior.

"The petition for injunction not only challenged the validity of above named laws and ordinances by proper allegations, but also contained allegations charging mal-administration of the pension fund by the trustees charged with the duty of administering this fund under said law and ordinances, in that it is charged that the parties named as pensioners were experienced, capable men, and well able to do their work at the time they were placed on the retired list and made beneficiaries of this fund, and that they are still able and capable to do such work. With this allegation as a basis, it is further alleged that in permitting the named parties to draw a pension, the said trustees are guilty of fraud on the pension fund. It is also charged that, because of the alleged unconstitutionality of the legislative enactment and the City ordinances in conformity thereto, the use of all the public funds, that have gone into and become a part of the pension fund, is unlawful and a diversion of public moneys; and further, that the ordinances, appropriating the said one per cent from the public revenues, are illegal and void.

"The appellees filed an answer, full and complete, denying specifically all charges of mal-administration by the trustees and specially pleaded that the city pension law, as enacted by the Legislature, and the ordinances passed by the City of Dallas in pursuance thereof became a part of the contract of employment of the policemen, firemen and fire alarm operators, and, as such, the payment of pensions to them thereunder was a payment of a part of their stated compensation for services rendered, previously withheld, and that the

ordinances passed by the City of Dallas and the state pension law are constitutional.

"There was a trial in the court below in which judgment was rendered in favor of appellees, denying the injunction and the appeal was duly prosecuted to this court, and submitted on briefs and oral arguments.

"Because of the importance of the case, and because there is doubt in the minds of the members of this court as to the correct solution of certain issues involved in the case, this court has deemed it advisable to certify the following questions to your Honorable Court for adjudication:

## "QUESTION No. 1.

"Is that portion of Title 109, Revised Statutes of 1925, embraced in articles numbered from 6029 to 6043, inclusive, a valid enactment, or is it invalid because of the limitations on legislative power contained in Sections 44, 51, 52 and 53 of Article 3, and Section 3 of Article 8, and Section 6 of Article 16 of the State Constitution?

## "QUESTION No. 2.

"Is an ordinance of the City of Dallas, appropriating from the general revenues of said City an amount of money equal to one per cent of the combined salaries of the fully paid policemen, firemen and fire alarm operators and applying same to the city pension fund, a valid ordinance, such appropriation of such money having been authorized by a majority vote of the voters of such city prior to the enactment of such ordinance?

## "QUESTION No. 3.

"In view of the fact that neither the legislative enactment in question, nor the ordinances of the City of Dallas, specifically authorize a review of the actions of the trustees as to their administration of this pension fund, can the plaintiff, whose only interest in the subject matter of this suit is that of a resident taxpayer, maintain a suit to enjoin such trustees because of alleged mal-administration of this fund?

"In connection with Question No. 3, we call the court's special attention to the provisions of Article 6239, *supra*.

## "QUESTION No. 4.

"In determining whether an applicant for a pension has served the requisite number of years, can his years of service previous to this legislative enactment be taken into consideration, or must he

have served the time required to entitle him to a pension, subsequent to such legislative enactment?

"In connection with Question No. 4, we call the court's special attention to the provisions of Article 6235, supra, and to Section 16, of Article 1, and to Sections 44 and 53 of Article 3, of the State Constitution."

The sections of the Constitution, so far as pertinent referred to in the certificate are as follows:

"Sec. 44 (Art. III). The legislature shall provide by law for the compensation of all officers, servants, agents and public contractors, not provided for in this Constitution, but shall not grant extra compensation to any officer, agent, servant or public contractors, after such public service shall have been performed or contract entered into for the performance of the same, nor grant by appropriation or otherwise, any amount of money out of the treasury of the State to any individual, on a claim, real or pretended, when the same shall not have been provided for by pre-existing law, nor employ any one in the name of the State, unless authorized by pre-existing law."

"Sec. 51 (Art. III). The legislature shall have no power to make any grant or authorize the making of any grant of public money to any individual, association of individuals, municipal or other corporations whatsoever," with certain stipulated exceptions.

"Sec. 52 (Art. III). The legislature shall have no power to authorize any county, city, town or other political corporation or subdivision of the State, to lend its credit or to grant public money or thing of value in aid of, or to, any individual, association, or corporation whatsoever," etc.

"Sec. 53 (Art. III). The legislature shall have no power to grant, or to authorize any county or municipal authority to grant, any extra compensation, fee or allowance to a public officer, agent, servant or contractor after service has been rendered or a contract has been entered into, and performed in whole or in part," etc.

"Sec. 3 (Art. VIII). Taxes shall be levied and collected by general laws and for public purposes only."

"Sec. 6 (Art. XVI). No appropriation for private or individual purposes shall be made."

"Sec. 16 (Art. 1). No bill of attainder, ex post facto law, retroactive law, or any law impairing the obligation of contracts, shall be made."

That portion of Title 109, Revised Statutes of 1925, embraced in Articles 6029 to 6043, authorizes the payment of pensions by incorporated cities having a population of over ten thousand to employees such as those mentioned in the certificate. By the terms of the act the fund created for the payment of such pensions is to be administered by a Board of Trustees composed of the mayor, two aldermen or commissioners, two citizens, the chief of police and the chief of the fire department. The plan contemplates that the employees mentioned who desire to be beneficiaries of the scheme and to participate in the fund shall file a written statement with the city clerk indicating such desire and authorizing the city to deduct one per cent of the employee's wages each month to form a part of the pension fund (Articles 6230-1). The fund may be increased by donations, rewards (Article 6231) and from public funds upon the majority vote of the voters of such city or town (Article 6242).

Article 6234 declares:

"Any person who at the establishment of said fund, or thereafter shall have been duly appointed and enrolled in the fire department, police department or fire alarm operator's department of any such city or town, to which application is made for participation in the said fund by such person, and who has filed his written application within thirty days after the organization of such board, or who shall file his application within thirty days after becoming a member of either of such departments, and who shall have allowed said deductions from his salary, as well as the beneficiaries hereinafter named, shall be entitled to participate in said fund."

Article 6235 further declares:

"Whenever any member of said departments who shall have contributed a portion of his salary, as provided herein, shall have served twenty years or more in either of said departments, he may be entitled to be retired from said service upon application, and shall, if the board approves, be entitled to be paid from such funds a monthly pension of one-half of the salary received by him at the time of his retirement."

That portion of Title 109 of the Revised Statutes referred to in the certificate is not in anywise obnoxious to the provisions of the Constitution cited. Without discussing in detail these provisions of the Constitution, it is sufficient to say each of them is intended to prevent the application of public funds to private purposes; in other words, to prevent the gratuitous grant of such funds to any individual, corporation, or purpose whatsoever. This limitation

upon the power of the Legislature is a wholesome one and is plainly stated in unequivocal terms. It is academic to say the Legislature has power to pass any law which its wisdom suggests that is not forbidden by some provision of the Constitution (Federal or State). If the pension provided for in this act is a gratuity or donation to the beneficiary, it is clearly forbidden by the fundamental law. On the other hand, if it is a part of the compensation of such employee for services rendered to the city, or if it be for a public purpose, then clearly it is a valid exercise of the legislative power.

There is no reason why a city may not engage its servants and employees upon any terms of payment acceptable to both parties. The plan authorized by the statute contemplates in legal effect that as compensation the officers and employees named shall receive the salaries agreed upon to be paid periodically and shall be entitled to participate in the fund provided for pensions according to the statutory plan. The law pertaining to such employment is necessarily a part of the contract of employment and is read into the contract as fully as though it had been actually incorporated therein. (Trinity etc. Co. v. Lion etc. Co. (Tex. Com. App.), 229 S. W., 483; U. S. Fidelity etc. Co. v. Henderson County (Tex. Com. App.), 276 S. W., 203, 1119). When an officer or employee coming within the statute is employed and evidences his assent to the pension scheme, he thereupon has a binding contract with his employer for the stipulated salary and likewise to be "entitled to participate" in the fund upon the terms prescribed. The right to participate in such fund is therefore not a gratuity or donation in any sense. It is as much a part of the agreed compensation as is the monthly stipend. See State v. Love, 89 Neb., 149, 34 L. R. A. (N. S.), 607, Ann. Cas. 1912 C, 542, 131 N. W., 196; Commonwealth v. Walton, 61 Am. St., 712, 38 Atl., 970; Whitehead v. Davie, 189 Calif., 715, 209 Pac., 1008; Jackson v. Otis, 66 Calif. App., 357, 225 Pac., 890; O'Dea v. Cook, 176 Calif., 659, 169 Pac., 366; People, ex rel. v. Abbott, 274 Ill., 388, 113 N. E., 696; Cobbs v. Home Insurance Co., 18 Ala. App., 206, 91 So., 627.

These conclusions call for an affirmative answer to questions 1 and 2.

As to question 3, the mal-administration referred to appears to be an allegation that persons being retired upon pension "were experienced, capable men, and were able to do their work at the time they were placed on the retired list and made beneficiaries of this fund and are still able and capable to do such work." Article 6235,

already quoted, prescribed the only requisites to retirement upon pension, and it nowhere embraces incapacity, inability, indigence, or the like. Service, and contribution to the fund are the only requirements made to entitle an applicant to the benefits of the fund. So that, we answer this question "No"; no mal-administration is shown.

With respect to question 4, we answer that Article 6235 of the statute declares: "Whenever any member of said departments who shall have contributed a portion of his salary, as provided herein, shall have served twenty years or more in either of said departments, he may be entitled to be retired from said service upon application, and shall, if the board approves, be entitled to be paid from such funds a monthly pension of one-half of the salary received by him at the time of his retirement." This does not expressly stipulate that the twenty years service shall be subsequent to the statute, nor is such intention implied. On the contrary, the language is unambiguous that any member who shall have served twenty years or more without respect to the time of such service shall be entitled to participate in the fund. In principle, it is as though the provision was for an age pension, as upon becoming sixty years of age. Upon the happening of such event while in the service the employee would be entitled to the pension irrespective of the length of the term of his service. Such an interpretation of the statute does not make it obnoxious to the constitutional prohibition against additional compensation for services already performed. The contract for the pension after twenty years in the service may, and often will, result in inequality of compensation for similar service rendered after the contract. But this is wholly a matter of discretion for the employing municipality and does not render the contract or the legislation authorizing it void. The courts are not concerned with the policy or wisdom of legislation, but they can deal only with the power of the legislative body and leave to that body, where it properly belongs, the responsibility for the exercise of that power.

We therefore recommend that questions 1 and 2 be answered "Yes" and that question 3 be answered "No," and that question 4 be answered as immediately above shown.

The opinion of the Commission of Appeals answering the certified questions is adopted and ordered certified.

*C. M. Cureton*, Chief Justice.