# THE ATTORNEY GENERAL
## OF TEXAS
### AUSTIN 11, TEXAS
ATTORNEY GENERAL


May 5, 1959

Honorable Jules Damiani, Jr.
District Attorney
Galveston County Courthouse
Galveston, Texas

Opinion No. WW-614

Re: Proposed resolution of
the Commissioners'
Court of Galveston Coun-
ty regarding the working
conditions of the Road
and Bridge Employees and
other employee benefits.

Dear Mr. Damiani:

You have requested our opinion regarding the validity
of the proposed resolution of the Commissioners' Court of
Galveston County. It recites that: . ". . . the Commissioners'
Court of Galveston County has heretofore discussed with the
Road and Bridge Employees of the County and their designated
representatives, ways and means for improving work conditions
and other matters, for the Road and Bridge Employees of Gal-
veston County, . . ." It also provides for setting forth
". . . a policy for the guidance of the Commissioners' Court
and said Road and Bridge Employees."

The proposed resolution consists of twenty-one
Articles which are entitled as follows: Dues Deduction for
Union Employees, Seniority, Hours of Work and Working Sched-
ule, Overtime and Holidays, Pay Days, Assignment of Work,
Sick Leave, Safety, Stewards and Officers, Funeral Allowance,
Jury Service, Bulletin Boards, Benefit Plans, Construction
Work, Discrimination, Protective Clothing, Longevity Pay,
Vacations, Grievance Procedure and Arbitration, Discharge,
Application of Provisions Herein.

The County Commissioners' Court is a body exercising
delegated powers for the purpose of carrying out State func-
tions. Furthermore, ". . . It is a settled rule of law in
this State that, where a Commissioners' Court exceeds its
power, attempts to allow and settle accounts not legally
chargeable against the county, its acts are void and may be
revoked at any time, or may be attacked collaterally in a

court of general jurisdiction."  Likewise, "Commissioners' courts, having limited jurisdiction, may act only within the sphere of the powers and duties--express or implied--conferred upon them by the Constitution and statutes of this State. . . ."  Howard v. Henderson County, 116 S.W. 2d 479, (Civ.App. 1938, error ref.)  The fixing of hours and wages and the regulation of working conditions has traditionally in Texas County government been accomplished by statute or by delegation of legislative powers to the Commissioners' Court.  However, we find no constitutional or statutory authorization for a collective bargaining procedure or for the recognition of a union of county employees.

Section 18, Article V of the Constitution of Texas provides that:

". . . The County Commissioners so chosen, with the County Judge, as presiding officer, shall compose the County Commissioners Court, which shall exercise such powers and jurisdiction over all county business, as is conferred by this Constitution and the laws of the State, or as may be hereafter prescribed."

Article 2351, Vernon's Annotated Civil Statutes, provides that the Commissioners' Court shall:

". . . 6.  Exercise general control over all roads, highways, ferries and bridges in their county. . . ."

Attorney General's Opinion O-4266 (1941) held:

". . . the wages or compensation of men working by the month for the various County Commissioners should be set or made under the authority of a resolution or order duly passed at a meeting of the Commissioners' Court and entered upon the minutes of such meeting."

Attorney General's Opinion V-1151 (1951) held that:

"The Commissioners' Court in a county operating under the provisions of the optional County Road Law of 1947, (Art. 6716-1,

V.C.S.) may raise the salaries or wages
of road department employees without the
recommendation and over the protest of
the County Road Engineer."

In Foreman v. Gooch, 184 S.W.2d 481, 484 (Civ.App.
1944), Writ ref. W.M., the Commissioners' Court duly
adopted an order providing that interest should be paid
on warrants issued to the employees of the road and bridge
department. In holding that a writ of mandamus should pro-
perly issue to the county auditor of Jefferson County re-
quiring him to countersign such warrants, the court said:

". . . We are of the opinion that
such interest as may accumulate on said
warrants before they are called for pay-
ment is a part of the compensation for
services performed, as much so as a per
diem wages or salary agreed upon.

". . .

"We feel that it will serve no good
purpose to enter into a lengthy discussion
of the constitutional and statutory pro-
visions and the cases cited dealing with
the power of the Commissioners' Court. We
content ourselves by saying that it is our
opinion that the Commissioners' Court had
the authority, under Article 2351 R.C.S.
and Article 5, Section 18 of the State Con-
stitution, to make the contract above re-
ferred to with the employees of the road
and bridge department, and having done so
in advance of the rendition of the servi-
ces by such employees, they were authorized
to order the issuance of the interest bear-
ing warrants in question, limited only by
the amount of the current fund at their dis-
posal, which included money in the treasury,
taxes in process of collection during such
tax year, and all other revenues which may
be anticipated with reasonable certainty
during such tax year."

Attorney General's Opinion No. 0-4140 (1941) con-
sidered the implied powers of a navigation district and
compared the same to the powers of a Commissioners' Court.

We quote from such opinion as follows:

"It is a well established principle of
law that the county commissioners' courts
may exercise only such power as expressly
or by necessary implication (sic) given to
said courts by the Constitution and Statutes.
This principle is so well established and
there are so many authorities supporting the
same, we deem it unnecessary to cite any of
such authorities. Therefore, we think that
a navigation district is subject to the rule
that it must be authorized by statute, either
expressly or by implication, to exercise any
authority or power which it does exercise.

" . . .

"As stated above, the Harris County Navi-
gation District is a political subdivision of
the State and certainly its funds are public
funds. Therefore, the several provisions of
the State Constitution limiting the use of
public funds by its subdivisions do, we think,
apply to the Harris County Navigation District.

"The pension system of the City of Dallas,
which had been adopted some years before the
Legislature had authorized city pensions, was
upheld in the case of Byrd vs. City of Dallas,
6 S.W. (2d) 738, and in considering several of
the constitutional provisions mentioned above,
it was held that they had no relation to a con-
tract between a municipal corporation and its
employees, but were intended to prevent the
application of public funds to private purposes.
The pension was held not to be a gratuity, but
a part of the compensation of the employee for
services rendered. Subsequently, in the case
of City of Dallas vs. Trammel, 101 S.W. (2d)
1009, the rule as to the pensions were (sic)
reiterated, but it was pointed out that the
pensioner has no vested right in future in-
stallments and that the amounts payable may be
increased or diminished.

" . . .

"It is quite common for the State and the

various subdivisions of the State government
to agree to furnish, as part of the compen-
sation of the employee, living quarters, gro-
ceries, automobiles, etc. . . .

" . . .

"It is our opinion that the medical servi-
ces and hospital facilities furnished employ-
ees of the Navigation District are sustainable
as a part of their earned compensation where
the Board has made general provisions therefor.
In other words, the Navigation District has
authority to agree, as part of the agreed com-
pensation to be paid employees, to furnish
stipulated services for hospitalization, drugs
and medical attention. However, these cannot
be unlimited in amount or kind, and must, there-
fore, be for some reasonable fixed maximum amount."

In Gulf Bitulithic Co. v. Nueces County, 11 S.W.2d
305, 313 (Com. App. 1928), the Commissioners' Court employed
an agent to reconstruct the county roads after a disasterous
hurricane. The court held:

"The commissioners' court of Nueces county,
under the power vested in it by law, had the
right to build and construct its public roads
without letting a contract therefor, if it saw
fit to do so. The power to build such roads
necessarily implied the additional power to em-
ploy such agents as might be reasonably neces-
sary to accomplish such purpose. In fact, there
is express statutory authority for the employment
of such agents. Article 1580, R.S. 1925. If it
had the power to employ plaintiff in error to
supervise the building of its roads, which cannot
be seriously questioned, it necessarily follows
that it could employ it for such length of time
as was reasonably necessary to complete such
work. . . ."

In Dodson v. Marshall, 118 S.W. 2d 621, 624 (Civ. App.
1938) writ dismissed, the Waco Court of Civil Appeals was
concerned with the legality of the renting by the Commis-
sioners' Court of Grayson County of a small alcove in the
courthouse to the operator of a cold drink stand. Justice
Alexander said:

". . . It should be noted in this connection that the contract here under consideration is terminable at the will of the commissioners, and that the court has not parted with its control over the premises. . . .

. " . . .

"Of course, we recognize that if the commissioners' court should lease for the purposes indicated space that was needed for county offices or other purposes or should grant a lease for such a time as to unreasonably interfere with the right of the court to regulate the use of the courthouse, or should otherwise materially interfere with the use of the courthouse as a whole for the purpose for which it is intended, said court might thereby exceed its jurisdiction or there might be a clear abuse of discretion, in which event the district court in the exercise of its supervisory powers would have a right to intervene. But so long as there is a reasonable exercise of the discretion vested in the commissioners' court in a matter within its jurisdiction, that court alone has the right to determine the policy to be pursued and the district court has no authority to intervene. Schiller v. Duncan, Tex.Civ.App., 21 S.W.2d 571, pars. 1,2; King v. Falls County, Tex.Civ.App., 42 S.W.2d 481 pars. 5,6; Slimp v. Wise County, Tex.Civ.App., 96 S.W.2d 537, pars. 7-9; Tarrant County v. Shannon, Tex.Sup., 104 S.W.2d 4, par. 5. The frequently recurring biennial elections at which the commissioners are required to account to the electorate for their conduct in matters of this kind furnishes sufficient protection to the public against ordinary indiscretion not amounting to a clear abuse thereof by the commissioners' court. . . ."

Attorney General's Opinion No. V-110 (1947) held that a Commissioners' Court did not have authority to enter into a collective bargaining contract with a labor union "when such agreement undertakes to limit the Com-

missioners' Court's authority as to the conditions of employment, working hours, vacations, and other matters relating to such employment."

An increase in compensation cannot be granted to apply retroactively, for to do so would be a clear violation of Section 53 of Article III of the Constitution of Texas, See Empire Gas and Fuel Co. v. State, 121 Tex. 138, 47 S.W.2d 265; Piercson v. Galveston County, 131 S.W.2d 27 (Civ.App. 1939). But an employee's service to the county prior to the effective date of the resolution does not have to be disregarded. See Byrd v. City of Dallas, 118 Tex. 281, 6 S.W. 2d 738.

Thus, in the employment of its road and bridge employees, the Commissioners' Court has the authority and duty to make reasonable provision for their compensation, working times and working conditions. This is a continuing duty and the Commissioners' Court can change such provisions from time to time. Part of such compensation may be in the form of reasonable "fringe benefits" so long as provision therefor is made in advance of the services being rendered. It could provide for wages, weekly pay days, longevity pay, overtime pay, hours of work, working schedule, work assignments, vacations, holidays, sick leave, time off for performing jury service, time off for attending funerals of close relatives, safe and sanitary working conditions, investigation of accidents, protective clothing, and employee-elected stewards to attend to grievances.

Likewise, the Commissioners' Court can employ agents for a period that is long enough to get a specific task accomplished, but no longer. It has a general power of control over roads and bridges, and this power cannot be surrendered, delegated or limited by contract or by a resolution such as the one under consideration. Any attempt to create vested rights in the road and bridge employees in derogation of such power would be ultra vires and void. It is our opinion that those parts of the proposed resolution in conflict with such general power of control would be void. In this connection, we invite your further consideration of the proposed resolution with particular attention to the provisions pertaining to seniority, grievance, discharge and arbitration.

It is our opinion that in the absence of specific statutory authority the Commissioners' Court could not provide for the deduction of union dues from the wages of union employees. Attorney General's Opinion No. V-487

(1948) held in connection with Section 1 of H.B. 420, Acts of the 50th Legislature, Regular Session, 1947:

> "Since the Act . . . does not contain any provision authorizing the county auditor to collect and pay premiums therefor from the county employees' salaries, you are respectfully advised that in the absence of such authority it is the opinion of this Department that the county auditor cannot collect and pay premiums on such a group insurance plan under the provisions of said Act."

It is our opinion that the Commissioners' Court could allow a labor union to use county bulletin boards with county officials and the general public but such use could not be to the exclusion of others. Attorney General's Opinion V-301 (1947) held:

> "A Commissioners Court may allot additional offices to the county clerk, if needed, for furnishing space to the general public to inspect and copy records, but may not grant space in the county courthouse to an abstract company for an office in which to conduct its business to the exclusion of all others."

Section 4 of Article 5154(c), V.A.C.S., provides that:

> ". . . no person shall be denied public employment by reason of membership or non-membership in a labor organization."

Section 2 of Article 5207(a), V.A.C.S., provides that:

> "No person shall be denied employment on account of membership or non-membership in a labor union."

Therefore, it is our opinion that it would be proper for the Commissioners' Court to resolve that persons shall not be discriminated against, discharged or harassed because of such membership or non-membership.

Article 5159(a), V.A.C.S., provides:

> "Section 1. Not less than the general prevailing rate of per diem wages for work of a

similar character in the locality in which
the work is performed, and not less than
the general prevailing rate of per diem
wages for legal holiday and overtime work,
shall be paid to all laborers, workmen and
mechanics employed by or on behalf of the
State of Texas, or by or on behalf of any
county, city and county, city, town, dis-
trict or other political subdivision of the
State, engaged in the construction of public
works, exclusive of maintenance. . . .

"Sec. 2. The public body awarding any
contract for public work . . . shall ascertain
the general prevailing rate of per diem wages
in the locality . . . for each craft or type
of workman . . . also the prevailing rate for
legal holiday and overtime work, . . ."

In Southern Prison Co. v. Reynolds, 110 S.W.2d 606
(Civ.App.) 1937, writ dismissed, the court stated:

"Since the power and duty of determining
the prevailing per diem wage rate for the
work on this contract was vested in the Com-
missioners' Court, it was not authorized to
ignore such power and duty in its discretion."

It is our opinion, therefore, that the Commissioners'
Court would be obligated to observe this duty at all times.

Attorney General's Opinion No. 0-7011 (1946) was con-
cerned with the question of whether or not a county-district
clerk could operate in his county office an abstract firm
and use county help, equipment and utilities in the operation
of said firm. The question was answered in the negative in
the following language:

"We know of no authority for the Com-
missioners' Court to expend county funds
for office equipment and supplies to be
used for purposes other than 'county pur-
poses.' Moreover, we know of no authority
for a county officer to use fees of office
to pay help used by said officer for a
purpose other than that of carrying out
the duties and functions of the office.
. . ."

Therefore, it is our opinion that tending to union business and furnishing the union with six copies of quarterly overtime reports would not be among the duties and functions of the road and bridge employees and the commissioners, respectively.

As stated above, we find no authorization for a collective bargaining procedure or for the recognition of a union as the bargaining agent for County employees.

We are attaching copies of the various earlier opinions referred to herein.

## SUMMARY

A Commissioners' Court has the power to make reasonable provision for the compensation (including "fringe benefits"), working times and working conditions of the road and bridge employees, provided this is done before the services are rendered. A Commissioners' Court cannot limit its power to provide for, or change, these matters at any time. It cannot pay a portion of the wages of road and bridge employees to a labor union without statutory authorization, and it cannot use county help to perform services for a labor union. It can allow a labor union and others to make reasonable use of county bulletin boards. It must provide for the payment of the prevailing wage by county contractors. It can provide that road and bridge employees shall not be discriminated against because of union or non-union membership.

Yours very truly,

WILL WILSON
Attorney General of Texas

By Jay Howell
Jay Howell
Assistant

JH:rm

APPROVED:

OPINION COMMITTEE
Geo. P. Blackburn, Chairman

Milton Richardson
Jack Goodman
W. R. Hemphill
C. Dean Davis

REVIEWED FOR THE ATTORNEY GENERAL
BY:  W. V. Geppert