

# THE ATTORNEY GENERAL

## OF TEXAS

CRAWFORD C. MARTIN
ATTORNEY GENERAL

AUSTIN, TEXAS 78711

February 17, 1970

*overruled by*
*H-365 where*
*conflicts*

Honorable J.C. Dingwall
State Highway Engineer
Texas Highway Department
Austin, Texas 78701

Opinion No. M-582

Re: Questions concerning the purchase of group insurance for State Highway Department employees.

Dear Mr. Dingwall:

Your recent request for an opinion of this office submits questions concerning the application of Articles 3.50 and 3.51 of the Texas Insurance Code, as amended. These questions are:

"1. Can the Texas Highway Department participate in the premium cost for Highway Department employees and appointive officials under a policy or policies of group health, accident, accidental death and dismemberment, disability income replacement and hospital, surgical and/or medical expense insurance?

"2. Can the Texas Highway Department participate in the premium cost of group policies which provide hospital, surgical and/or medical expense insurance for dependents of Highway Department employees and appointive officials?

"3. Can the Texas Highway Department participate in the premium cost of group life insurance policies for Highway Department employees and appointive officials?

"4. Can the Texas Highway Department procure contracts with any insurance company authorized to do business in this state and participate in the cost for group insurance found to be legal in questions 1, 2 and 3 as listed above?

"5. If the answer to question 4 above is found to be negative as it may apply to certain types of insurance companies, can the Texas Highway Department, acting through a Board of Trustees or similar arrangement, consisting of Highway employees and appointed by the Highway Commission, procure contracts with such insurance companies authorized to do business in this state and participate in the cost for group insurance found to be legal in questions 1, 2 and 3 as listed above?

"6. Can the Comptroller legally pay the premium cost under S. B. 574, 61st Legislature, Regular Session, and as authorized by the Texas Highway Department out of the State Highway Fund for such group insurance coverage as found legal in questions 1, 2, 3, 4 or 5 as listed above?"

Article 3. 50 of the Texas Insurance Code deals with group life insurance upon public employees. Article 3. 51 deals with medical and disability insurance upon State employees and medical insurance upon the dependents of such employees.

Article 3. 50, Section 1, provides, in part, as follows:

"No policy of group life insurance shall be delivered in this State unless it conforms to one of the following descriptions:

". . .

"(3) A policy issued to any association of employees of the United States Government or any subdivision thereof, provided the majority of the members of such association are residents of this state, an association of public employees, an incorporated city, town or village, an independent school district, common school district, state colleges or universities, any association of state employees, any association of state, county and city, town or village employees, and any associa-

tion of any combination of state, county or city, town or village employees and any department of the state government which employer or association shall be deemed the policyholder to insure the employees of any such incorporated city, town or village, or any such independent school district, of any common school district, of any such state college or university, of any such department of the state government, members of any association of state, county or city, town or village or of the United States Government or any subdivision thereof, provided the majority of such employees reside in this state, employees for the benefit of persons other than the policyholder subject to the following requirements:

". . .

"(b) The premium for a policy issued to any policyholder authorized to be such policyholder under Subsection (3) of Section 1, Article 3. 50, Texas Insurance Code, may be paid in whole or in part from funds contributed by the employer, or in whole or in part from funds contributed by the persons insured under said policy . . ."

Article 3. 51, Section 1(a) provides:

"(a) The State of Texas and each of its political, governmental and administrative subdivisions, departments, agencies, associations of public employees, and the governing boards and authorities of each state university, colleges, common and independent school districts or of any other agency or subdivision of the public school system of the State of Texas are authorized to procure contracts with any insurance company authorized to do business in this state insuring their respective employees, or if an association of public employees is the policyholder, insuring its respective members,

or any class or classes thereof under a policy or policies of group health, accident, accidental death and dismemberment, disability income replacement and hospital, surgical and/or medical expense insurance or a group contract providing for annuities. The dependents of any such employees or association members, as the case may be, may be insured under group policies which provide hospital, surgical and/or medical expense insurance. The insureds' contributions to the premiums for such insurance or annuities issued to the employer or to an association of public employees as the policyholder may be deducted by the employer from the insureds' salaries when authorized in writing by the respective employees so to do. The premium for the policy or contract may be paid in whole or in part from funds contributed by the employer or in whole or in part from funds contributed by the insured employees. When an association of public employees is the holder of such a policy of insurance or contract, the premium for employees that are members of such association may be paid in whole or in part by the State of Texas or other agency authorized to procure contracts or policies of insurance under this section, or in whole or in part from funds contributed by the insured employees that are members of such association; provided, however, that any monies or credits received by or allowed to the policyholder or contract holder pursuant to any participation agreement contained in or issued in connection with the policy or contract shall be applied to the payment of future premiums and to the pro rata abatement of the insured employee's contribution therefor.

"The term employees as used herein in addition to its usual meaning shall include elective and appointive officials of the state."

In reply to your first question we point out that this office has previously approved State financial participation in group health and

accident insurance plans for State employees. Attorney General's Opinion M-125 (1967) holds that the expenditure of state funds to pay the premiums for certain group insurance contracts for State employees as a part of their benefits or compensations is within the realm of public purpose. Based upon the prior opinion of this office, and the specific authority granted in the above quoted Article 3.51, you are advised that the Texas Highway Department may participate in the premium cost for insurance upon Highway Department employees under a policy or policies of group health, accident, accidental death and dismemberment, disability income replacement and hospital, surgical and/or medical expense insurance.

Your second question deals with the State's participation in the payment of premiums on group hospital, surgical and/or medical expense insurance upon the dependents of Highway Department employees, and your third question involves the participation in the payment of premiums of group life insurance on the Highway Department employees themselves. Your second and third questions involve essentially the same problems of law and will be answered jointly. Those problems relate to the constitutionality of the statutes, and we conclude that the provisions above quoted are constitutional.

In Attorney General's Opinion M-138 (1967), it was held that there was no unconstitutional gift of public funds in permitting the State to participate in group life insurance premiums for State employees. In Attorney General's Opinion M-408 (1969), dealing with the subject of insurance policies for Legislators, it was held that there was no constitutional prohibition against the use of State funds to make premium payments on group, health and accident insurance policies for members of the Legislature, but that there were constitutional prohibition against the use of State funds for the payment of premiums on group life policies for Legislators and their dependents and for group health and accident policies covering the dependents of Legislators. In that opinion it was pointed out that Section 24 of Article III of the Constitution of Texas specifically limits the salary and expenses which may be paid members of the Legislature and that Section 51 of Article III and Section 6(a) of Article XVI of the Constitution prohibit grants and appropriations for private or individual purposes. That opinion held that there was no constitutional inhibition against the use of State funds to pay for sickness and accident insurance for the Legislators themselves because:

> "Such an expenditure serves a beneficial
> and useful public or governmental function in help-
> ing to assure maximum State service and is di-
> rectly related to the health and well being of State
> servants in the performance of their duties."
> (Emphasis added.)

However, no such connection between the functioning of the Legislative branch of the government and the payment of life insurance premiums upon their lives or the payment of premiums for health and accident insurance upon the dependents of Legislators was found to exist, and, since the payments were in excess of the limitations provided by Section 24 of Article III of the Constitution this office held that the constitutional inhibitions against appropriations for private or individual purposes barred the payment of such premiums by the State.

The above mentioned opinions (M-408 and 138) are to be distinguished. It will be observed that Attorney General's Opinion M-408 involved insurance coverage for State Legislators, whose compensation and expense allowances are established and expressly limited by the Constitution, while Attorney General's Opinion M-138 deals with State employees, whose salaries and other rights to compensation are determined by the Legislature under power given it by Section 44 of Article III of the Constitution. In other words, under the Constitution the Legislature may fix its own salary or compensation only within the Constitutional limitations, but there are no such limitations affecting the amount of the benefits and compensation of other state employees. Of course, the Constitutional provisions of Article III, Section 51 and Article XVI, Section 6(a), forbiding grants and appropriations for private or individual purposes unless authorized by the Constitution, apply to both Legislators and public employees. But we do not deem any of these Constitutional prohibitions to be applicable to Articles 3.50 and 3.51 of the Insurance Code, as amended. What might be considered a valid "compensation" to public employees, if given to Legislators, might be prohibited by the plain limitations provided by Section 24 of Article III of the Constitution and thus become an unconstitutional gift or appropriation for private purposes. See Terrell v. Middleton, 187 S. W. 367, 371-373, (Tex. Civ. App. 1916, error ref. 108 Tex. 14, 191 S. W. 1138, reh. den. 108 Tex. 19, 193 S. W. 139).

Byrd v. City of Dallas, 118 Tex. 28, 6 S. W. 2d 738 (1938) involved a constitutional challenge to the validity of a public employees' pension program.

The Court stated:

> "It is academic to say the Legislature has
> power to pass any law which its wisdom suggests
> that is not forbidden by some provision of the Con-
> stitution (federal or state. ) If the pension provided
> for in this Act is a gratuity or a donation to the bene-
> ficiary, it is clearly forbidden by the fundamental
> law. On the other hand, if it is a part of the compensa-
> tion of such employee for services rendered to the city,
> or if it be for a public purpose, then clearly it is a
> valid exercise of the legislative power. " (Emphasis
> added. )

In applying the Byrd test, our question becomes a matter of de-
termining whether the legislative authorization contained in Articles 3. 50
and 3. 51, quoted above, for State participation in the payment of premiums
for group life insurance upon its employees or group hospital, surgical
and/or medical expense insurance policies that cover the dependents of its
employees may be considered as a part of the benefits or compensation for
such employees for services rendered to the State. The authorization for
these types of expenditures was first enacted in 1967, by way of amend-
ment to Articles 3. 50 and 3. 51. The authorization (with certain additions
which are not material to this opinion) was specifically reenacted in 1969,
subsequent to our 1967 opinion, M-138, above.

We cannot assume that the Legislature intended to authorize an un-
constitutional deed; rather, it is our duty to interpret the legislative act so
as to give it full constitutional effect, if such be reasonably possible.
Friedman v. American Surety Co. of New York, 137 Tex. 149, 151 S. W. 2d
570, 578 (1941); Greene v. Robinson, 111 Tex. 516, 8 S. W. 2d 655 (1928);
53 Tex. Jur. 2d 225, Statutes, Section 158. A conclusion that the expendi-
tures referred to in your questions No. 2 and No. 3 are intended to be part
of the compensation for State employees would render the statutes constitu-
tional and at the same time give full effect to the clearly expressed will of
the Legislature. We so conclude.

Opinion M-138, mentioned above, relies, in part, upon the reason-
ing advanced in Opinion WW-888, where this office held that the Board of
Texas State Hospitals and Special Schools was authorized to rent housing
for the business manager of a state school. The authorizations in question

(for group life insurance on the employees and group hospital, surgical and/or medical expense insurance policies covering their dependents) involve basic living expenses of State employees. The Legislature, in enacting these statutes, was apparently motivated by a desire, among other things, to keep the State employees' compensation in line with the cost of living. State participation in group insurance programs that are a normal expense of modern life, in our opinion, must be considered as compensation for the employee and not a gratuity. See Friedman v. American Surety Co. , supra.

In response to your second and third questions, you are therefore advised that it is the opinion of this office that the Texas Highway Department may participate in the premium cost of group policies which provide hospital, surgical and/or medical expenses insurance for dependents of Highway Department employees and appointive officials, and can participate in the premium cost of group life insurance policies for such employees.

With regard to your fourth question, your attention is directed to Attorney General's Opinion WW-986 (1961), and the authorities cited therein which construe Section 52 of Article III of the Constitution. Based upon such opinion you are advised that the State may not enter into any contract whereby it would become a member (or shareholder) in a mutual insurance company. The language of Section 1(a) of Article 3.51 of the Insurance Code authorizing the procurement of such insurance from "any insurance company authorized to do business in this state" must be construed in the light of the prohibitions contained in said Section 52 of Article III of the Constitution. We are aware of no restriction, other than good business discernment, which would prohibit the State from contracting with any other type of insurance company.

With regard to your fifth question, it is our opinion that the State agency may not authorize trustees to do what it could not do by and for itself. It could not confer upon others a greater authority than it possesses under the Constitution and statutes. Therefore, in our opinion, the action of the State agency, through trustees or other agents, in purchasing insurance in a mutual company would be prohibited by Section 52 of Article III of the Constitution.

Your sixth question, regarding the authority of the Comptroller

to pay the premium costs authorized by the Texas Highway Department under Articles 3. 50 and 3. 51, (as amended and reenacted by S. B. 574, 61st Legislature, R.S. , 1969, Ch. 414, p. 1371) is answered in the affirmative. See Attorney General's Opinion M-138 (1969) and our answers to questions one, two and three above.

## SUMMARY

By virtue of the specific authority granted in Article 3. 51 of the Texas Insurance Code the Texas Highway Department may participate in the premium cost for Highway Department employees and appointive officials under a policy or policies of group health, accident, accidental death and dismemberment, disability income replacement and hospital, surgical and/or medical expense insurance.

By virtue of Article 3. 51 of the Texas Insurance Code the Texas Highway Department may participate in the premium cost of group policies which provide hospital, surgical, and/or medical expense insurance for dependents of Highway Department employees and appointive officials, and by virtue of Article 3. 50, said Department may participate in the premium cost of group life insurance policies for such employees and appointive officials.

By virtue of Section 52 of Article III of the Constitution of Texas a State agency may not enter, either directly nor through trustees or agents into any contract whereby it would become a shareholder in a mutual insurance company. Articles 3. 50 and 3. 51 of the Texas Insurance Code contain no prohibition regarding the authority of the State to contract with any other type of insurance company.

The Comptroller may legally pay the premium costs authorized by the Texas Highway Department under Articles 3. 50 and 3. 51 of the Texas Insurance Code.

Yours very truly,

CRAWFORD C. MARTIN
Attorney General of Texas

-2779-

Prepared by Ralph R. Rash
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Kerns Taylor, Chairman
W. E. Allen, Acting Co-Chairman

Wayne Rodgers
Roger Tyler
Ray McGregor
Jack Goodman
Rex White

MEADE F. GRIFFIN
Staff Legal Assistant

ALFRED WALKER
Executive Assistant

NOLA WHITE
First Assistant