

# THE ATTORNEY GENERAL
# OF TEXAS

## AUSTIN, TEXAS 78711

**JOHN L. HILL**
**ATTORNEY GENERAL**

March 14, 1974

The Honorable Clayton T. Garrison
Executive Director
Texas Parks & Wildlife Dept.
John H. Reagan Bldg.
Austin, Texas 78701

Opinion No. H- 257

Re: Whether Parks and Wild-
life may spend state funds,
matched by federal funds,
for construction of facilities
on land owned in whole or in
part by federal government.

Dear Mr. Garrison:

You have requested an opinion on whether the Parks and Wildlife
Department (the Department) may contract with the federal government
to share the cost of constructing recreation facilities for state parks if
title to the facilities will be retained in whole or in part by the federal
government.

The Reservoir Public Parks and Recreational Facilities Act, 16
U. S. C. A. § 460d, authorizes the Corps of Engineers to construct,
maintain, and operate public park and recreation facilities on the land
adjacent to reservoir projects under its control. In addition the Act
authorizes the Corps to lease the adjoining lands to state and local
agencies for park purposes. Pursuant to this authority the Corps has
leased four separate sites to the Parks and Wildlife Department; the
Department has established and is operating a state park at each one
of these sites. The leases ordinarily run for a period of fifty years
and are subject to renewal.

Recently the Corps has advised the Department that federal funds
are available to match state expenditures for the construction of
recreation facilities at each of the park sites the Department leases.
The Corps has proposed a contract under the terms of which the cost
of construction would be shared equally and each party would retain

an undivided interest in completed facilities proportionate to the costs it had paid. Immediately upon completion of a facility the federal government's undivided interest in it would be leased to the Department for the lifetime of the facility or for the remaining term of the lease on the underlying real property. In return the Department would be obligated to maintain and operate the facility during the time it is occupied by the State. Alternatively the Corps proposes an agreement whereby construction costs are again shared equally but the federal government retains title to the completed facility in its entirety and leases it to the Department to be operated and maintained during its lifetime or for the remaining term of the lease on the underlying real property, which ever is the shorter term, a period of approximately fifty years. The Department asks whether it has the authority to enter into either of the agreements proposed by the Corps.

When established, the Department was given all the powers and duties that previously had been vested in the Texas State Parks Board. Art. 978f-3a, Vernon's Texas Penal Auxiliary Laws. One of the State Parks Board's most important duties was to acquire state park sites by purchase, gift, or otherwise and "to improve, beautify, and equip, and to contract with any person, firm, or corporation for the improvement, beautification or equipment of the State parks of this State to such an extent as to said Board might be deemed advisable." Art. 6070b, V. T. C. S. In 1971 the Legislature created a new special fund, the Texas Parks Fund, to be used by the Department for the acquisition, planning, and development of state parks. § 3, Art. 7.06, Taxation-General, V. T. C. S.

Furthermore, the Appropriations Act for fiscal years 1974 and 1975 contains a substantial appropriation of funds to be used by the Department for the planning, acquisition, and development of state parks. (Acts 1973, 63rdLeg., ch. 659 at 2007). Item 23 provides:

"There is hereby appropriated from the Texas Park Fund... for the purpose of planning, acquisition and development of State parks and State historic sites. Such expenditures include, but are not limited to, salaries and wages, professional services and fees, travel, capital outlay, including land and improvements

<u>thereto</u>, and all other necessary costs and expenses whether <i>by contract or direct payments.</i> "(emphasis added)

A special rider found at p. 2012, chapter 659, <u>supra</u>, provides as follows:

"Any federal grants, allocations or aids for
. . . improving, developing and planning public
parks. . . may be accepted and disbursed through
the State Treasury by said Department for the
purposes for which they were granted and are
hereby appropriated for such purposes. . . . "

The effect of these statutes is to equip the Department with broad authority, and the necessary funds, to acquire state parks and to improve and develop them. They also permit the Department to contract with other persons or agencies for the achievement of these objectives and to accept and utilize any federal funds offered for these purposes. An agreement with the federal government to share the costs of constructing recreation facilities in state parks already established by the Department will clearly result in an improvement of the parks and is apparently the kind of cooperative venture the Legislature envisioned the Department would undertake under the authority of Art. 6070b. Therefore it is our opinion that the Department has both the statutory authority and the necessary appropriations to enter into the contracts proposed by the Corps of Engineers.

But even though statutorily authorized, an agreement made by the Department is unlawful if it violates the constitutional prohibition contained in Article 3, § 51, of the Texas Constitution which states:

"The Legislature shall have no power to make
any grant or authorize the making of any grant of
public moneys to any individual, association of
individuals, municipal or other corporations what-
soever. . . . "

Because of this provision, it might be argued that the contracts require the Department to expend state funds for the benefit of an individual, in this case the federal government.

Texas courts have consistently held that the constitutional prohibition against gratuitous grants is not violated so long as the expenditure under scrutiny is made for a valid public purpose. Bullock v. Calvert, 480 S. W. 2d 367 (Tex. 1972). If the primary purpose of the expenditure is a proper public one, it matters not that an incidental benefit is derived by an individual or a particular group. State v. City of Austin, 331 S. W. 2d 737 (Tex. 1960) and Barrington v. Cokinos, 338 S. W. 2d 133 (Tex. 1960). When an expenditure of state funds is required by a contractual arrangement to which the state or one of its agencies is a party, the constitutional stricture against gratuitous grants is satisfied if the state receives something of value in return, a "quid pro quo". Byrd v. City of Dallas, 6 S. W. 2d 738 (Tex. 1928); see generally Attorney General Opinion H-109 (1973) and cases cited therein.

The agreements suggested by the Corps of Engineers unquestionably have a valid public purpose, e. g. enhancing the recreational value of state parks by constructing additional recreational facilities in them. Although under their terms the federal government may retain title to all facilities constructed, they will be leased to the Department for their entire useful life, or at least for as long as the lease of the underlying real property continues. The Department will retain control over the facilities and, as a result, will be in a position to insure that they are used for their intended public purpose.

Therefore since the contracts in question have a valid public purpose and do not require the Department to expend state funds without receiving anything in return, they do not violate the constitutional prohibition against the gratuitous grant of public money. The Department may lawfully accept either of the contractual arrangements proposed by the Corp of Engineers.

## SUMMARY

The Parks and Wildlife Department may contract with the federal government to share the cost of constructing recreation facilities for state parks leased from the federal government even though title to the facilities will be retained by the federal government.

Yours very truly,

JOHN L. HILL
Attorney General of Texas

APPROVED:

LARRY F. YORK, First Assistant

DAVID KENDALL, Chairman
Opinion Committee