

# THE ATTORNEY GENERAL
## OF TEXAS

### AUSTIN, TEXAS 78711

JOHN L. HILL
ATTORNEY GENERAL

May 7, 1975

The Honorable M. L. Brockette
Commissioner of Education
201 East Eleventh Street
Austin, Texas 78701

Opinion No. H- 602

Re: Use of school district
funds to purchase personal
injury insurance protection.

Dear Dr. Brockette:

Noting that school districts are authorized to purchase insurance protection against claims made by injured parties and others under the Texas Tort Claims Act (Article 6252-19, V. T. C. S.), your office has asked whether an independent school district may use local district maintenance funds to purchase:

> (a) Personal injury protection coverage as provided for in article 5.06-3, Vernon's Texas Insurance Code (Acts 1973, 63rd Leg., ch. 52, p. 90);

> (b) Uninsured motorist protection as provided for in article 5.06-1, Vernon's Texas Insurance Code, (Acts 1967, 60th Leg., ch. 202, p. 448).

In Attorney General Opinion M-989 (1971) this office concluded that school districts were authorized to purchase insurance protection against claims for bodily injury arising out of risks recognized by section 3 of the Texas Tort Claims Act (the general liability section) and that they might also purchase such insurance to cover employees exposed to individual liability by virtue of their official duties. And see Attorney General Opinion H-70 (1973).

Article 5.06-3 requires that, unless the coverage is rejected in writing, all policies of automobile liability insurance issued or delivered in this State shall provide for personal injury protection coverage, defined in subparagraph (b) as:

> "Personal injury protection" consists of pro-
> visions of a motor vehicle liability policy which
> provide for payment to the named insured  in the
> motor vehicle liability policy and members of the
> insured's household, any authorized operator or
> passenger of the named insured's motor vehicle
> including a guest occupant, up to an amount of
> $2,500 for each such person for payment of all
> reasonable expenses arising from the accident
> and incurred within three years from the date thereof
> for necessary medical, surgical, X-ray and dental
> services, including prosthetic devices, and necessary
> ambulance, hospital, professional nursing and
> funeral services, and in the case of an income
> producer, payment of benefits for loss of income
> as the result of the accident; and where the person
> injured in the accident was not an income or wage
> producer at the time of the accident, payments of
> benefits must be made in reimbursement of neces-
> sary and reasonable expenses incurred for essential
> services ordinarily performed by the injured person
> for care and maintenance of the family or family
> household. . . .

Subparagraph (c) of the article provides that the benefits are payable without regard to fault and without regard to the availability of similar benefits from a collateral source. It provides that payment of the benefit shall not create in the insurer any right of subrogation. These provisions assure recovery by the beneficiary regardless of duplicate payments in a judgment against a third person, under workmens compensation, under a hospitalization policy, under a policy covering interruption of employment, or any other source.

Despite the similarity of this coverage to other coverages which have been approved for purchase by subdivisions of the State, and particularly school districts, we are compelled to hold that there is no authorization for a school district to purchase personal injury protection

coverage as defined in article 5.06-3(b)  of the Insurance Code.

Furnishing hospitalization insurance has been upheld only because it is considered a part of the employee's compensation. Attorney General Opinions Nos. WW-731 (1959); WW-1101 (1961). And see Byrd v. City of Dallas,  6 S. W. 2d, 738 (Tex. 1938).

However, under section 5.06-3, the coverage bought by the school district is not only for the employee but also for any other persons who are injured while riding in vehicles owned by the school district and operated by its employees.  Although limited coverage which benefited only the employee and those for whom he is financially responsible might be authorized as a part of an employee's compensation, such broad coverage as 5.06-3 contemplates is not, in our opinion, actually employee compensation since the benefits inure to such a broad group of persons.

Further, the school district is not authorized to spend funds to benefit private individuals.  Tex. Const. art. 3, secs. 50, 51 and 52. Under section 5.06-3, the no-fault character of the coverage would provide benefits to persons to whom the school district owes no legal obligation.

In our opinion the provisions of such coverage, at the expense of the school district, would amount to a grant of public money or thing of value to an individual, in violation of article 3, sections 50, 51 and 52 of the Texas Constitution.

We, therefore, answer your first question in the negative.

Uninsured motorist coverage is not defined by statute as precisely as is personal injury protection coverage.  See article 5.06-1, Vernon's Texas Insurance Code.  As described in the Texas Standard Form automobile liability policy, it is the obligation of the insurer:

> To pay all sums which the insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an uninsured

automobile because of bodily injury, sickness or
disease, including death resulting therefore, . . .
caused by accident and arising out of the ownership
maintenance or use of such uninsured automobile . . .

In effect, payment under this coverage would meet the obligation
of a third person to the occupant of the district's vehicle (whether an
employee or not) at the expense of the district.  We feel the same
observations we made earlier as to the personal injury protection
coverage would apply and that there is no authority for the purchase
of such uninsured motorist coverage by a school district upon its
vehicles.

Such coverage does not in any way meet any obligation of the
school district created by the Tort Claims Act.

We therefore answer your second question in the negative.

## SUMMARY

The purchase of either personal injury protection
coverage or uninsured motorist coverage by an
independent school district with local district
maintenance funds would be unconstitutional.

Very truly yours,

JOHN L. HILL
Attorney General of Texas

APPROVED:

DAVID M. KENDALL, First Assistant

C. ROBERT HEATH, Chairman
Opinion Committee

lg