

# THE ATTORNEY GENERAL
## OF TEXAS

### AUSTIN, TEXAS 78711

JOHN L. HILL
ATTORNEY GENERAL

August 16, 1977

Honorable Henry Wade
Dallas County District Attorney
Sixth Floor, Records Building
Dallas, Texas 75202

Opinion No. H- 1042

Re: Payment of premiums for
county clerk's statutorily
required errors and omis-
sions policy.

Dear Mr. Wade:

You have asked whether Dallas County may legally pay pre-
miums for insurance which article 1937, V.T.C.S., requires the
Dallas County Clerk to obtain. In addition to requiring that
county clerks give faithful performance bonds to the counties
in which they are elected, and bond their deputies, the statute
requires them to "obtain an errors and omissions insurance
policy, covering the county clerk and [his] deputies. . . .
against liabilities incurred through errors and omissions in
the performance of [their] official duties. . . ." Sec. 4. The
minimum amount of the insurance coverage is made dependent upon
the fee-collecting history of the office. Section 5 of article
1937 states:

> The premiums for the bonds and the errors
> and omissions policies required by this Act
> to be given, or to be obtained, by the
> county clerk of each county shall be paid
> by the Commissioners Court of the county
> out of the general fund of the county <u>as
> additional compensation for the services
> of the county clerk and which additional
> compensation shall be cumulative of and to
> all other compensation presently or here-
> after authorized for said county clerk.</u>

(Emphasis added).

An errors and omissions policy is professional liability
(malpractice) insurance providing a specialized and limited type

of coverage compared to general comprehensive insurance. It is designed to insure members of a particular professional group from liability arising out of the special risk such as negligence, omissions, mistakes and errors inherent in the practice of the profession. Grieb v. Citizens Casualty Co. of New York, 148 N.W.2d 103 (Wis. 1967); 13 Couch on Insurance 2d § 48:161 at 605, Errors and Omissions.

In 1965 when the errors and omissions policy requirement was first added to the law, the statute stated merely that "[t]he premiums for said insurance shall be paid out of the funds of the county by the Commissioners Court. . . ." It did not characterize the payment as constituting additional compensation for the county clerk, and Attorney General Opinion C-506 (1965) concluded that payment of the premium could not benefit the county inasmuch as governmental immunity applied to the official acts of the clerk and his deputies. The provision was said to violate sections 51 and 52 of article 3 of the Texas constitution prohibiting gifts of public funds. Attorney General Opinion C-607 (1966) followed, deciding on the same grounds that a county could not pay the short-rate cancellation premium for a clerk's policy cancelled in response to Attorney General Opinion C-506.

In 1969, the Legislature amended article 1937 to read as it does today, but Attorney General Opinion M-441 (1969) ruled that new language expressly constituting the payment "additional compensation" made no difference, observing:

> This recitation does not alter the fact that public moneys are being used to accomplish an unauthorized purpose; that is, to discharge a liability that is not the responsibility of the county. Those purposes which the Legislature is prohibited from accomplishing directly may not be accomplished indirectly.

Id. at 3.

We do not agree with Attorney General Opinion M-441 that the "additional compensation" language makes no difference. In our view, the present premium payment provision of article 1937, V.T.C.S., is valid.

One of the questions addressed in Attorney General Opinion M-989 (1971) was whether a school district might purchase with public funds an all-risks automobile liability insurance policy protecting its officers and employers (as distinct from the district itself) against tort claims arising from their official duties, even though the governmental immunity of the district protected them from liability for most of the risks insured against. The opinion approved the purchase, stating:

> [T]hese units of government have the authority to set employee pay levels and . . . the purchase of insurance coverage by employers is a universally accepted element of employee salaries. Viewing the purchase of insurance as an element of employee compensation, on the same basis as pension plans, group life and group health and accident policies, we find no violation of Article III, Section 51, Texas Constitution.

Id. at 4.

Unless there is a specific constitutional exception provided, it is unconstitutional to make payments of public money for the benefit of private individuals except as an incident to the direct accomplishment of a proper public purpose or in return for services rendered the public. Tex. Const. art. 3, §§ 44, 51, 52. If authorized by law, insurance coverage may be provided public servants as a form of compensation. Attorney General Opinion WW-731 (1959). When that is done, the constitutionality of the purchase does not depend upon the breadth of the coverage extended. It is purchased to compensate the servant for services which he has already rendered the public, and the use of the insurance is of no constitutional consequence, just as the use of an employee's salary is of no constitutional consequence to the state after he receives it. However, when the state provides employee benefits for some reason other than compensation, the provision of benefits must be for a public purpose to escape article 3, section 51 and section 52 condemnation. Then, the beneficiary (in the broad sense) of insurance purchased by the state or one of its subdivisions is all-important because if public interests are not being protected, the purchase is illegal. See Attorney General Opinion H-958 (1977); see also Attorney General Opinions H-742 (1975); H-602 (1975); H-70 (1973).

Language in Attorney General Opinion H-70 (1973) has been brought to our attention which seems to conflict with the conclusion of Attorney General Opinion M-989 (1971). In H-70 we

were addressing the proposed purchase of insurance to protect independent school district trustees from costs of litigation growing out of the discharge of their official duties. We said:

> School districts are not authorized to purchase insurance coverage for their officers and employees 'as an element of employee compensation'. If purchased at all, insurance must be purchased for the purpose of protecting a public interest, not a private one -- though private interests may be in-cidentally benefited.

Id. at 5. In context, the statement was a correct one, for the trustees of independent school districts must serve without compensation. Education Code § 23.19. However, the language should not be applied to trustees or employees for which the law authorizes that form of compensation.

This distinction was observed in Attorney General Opinion H-958 (1977). Another opinion, Attorney General Opinion H-602 (1975), applied the distinction but did not articulate it. There, an independent school district wished to buy no-fault "personal injury protection" coverage and "uninsured motorist coverage" with public funds -- not as insurance for the employees as part of their compensation, but as a part of an insurance package protecting the district itself. Legally, a school district could not have been held liable for the claims the insurance would have covered. The opinion ruled against the plan on the same grounds Attorney General Opinions C-506 and C-607 originally ruled against the payment of premiums for a county clerk's errors and omissions coverage: aside from compensating its servants, no public purpose of the district could have been served by such expenditures.

Such situations are to be distinguished from the one here. The payment of the premium here is legislatively directed and is authorized specifically as additional compensation for the county clerk. We know of no constitutional restriction on such legislative action. Tex. Const. art. 3, § 44; art. 5, § 20; art. 16, § 61. See Byrd v. City of Dallas, 6 S.W.2d 738 (Tex. Comm'n App. 1928, opinion adopted); Attorney General Opinion WW-1101 (1961); see also Wichita County v. Robinson, 276 S.W.2d 509 (Tex. 1954). In our opinion, Dallas County may legally pay, and is required to pay, the premium for the errors and omissions policy which article 1937, V.T.C.S., requires the Dallas county clerk to obtain. Attorney General Opinion M-441 (1969) is overruled.

## S U M M A R Y

Dallas County must pay the premium for the errors and omissions policy which article 1937, V.T.C.S., requires the Dallas county clerk to obtain.

Very truly yours,

JOHN L. HILL
Attorney General of Texas

APPROVED:

DAVID M. KENDALL, First Assistant

C. ROBERT HEATH, Chairman
Opinion Committee

jst