

# THE ATTORNEY GENERAL
# OF TEXAS

October 7, 1988

JM MATTOX
TTORNEY GENERAL

Honorable Tim Curry
Criminal District Attorney
200 West Belknap Street
Fort Worth, Texas    76196

Opinion No.   JM-964

Re:  Authority of a county to make mortgage payments on behalf of its indigent residents  (RQ-1413)

Dear Mr. Curry:

You ask whether counties may make mortgage payments on behalf of their indigent residents.  Your question is prompted by an administrative rule adopted by the Texas Department of Human Services pursuant to chapter 34 of the Human Resources Code.  Two issues must be considered: whether the county has statutory authority to provide such financial assistance and whether such statutory authority is consistent with provisions of the Texas Constitution that require public funds to be spent for public purposes.  Attorney General Opinion JM-942 (1988).

Counties in Texas are limited to exercising those powers that are specifically conferred on them by statute or the constitution, but they have broad discretion in exercising express powers.  Canales v. Laughlin, 214 S.W.2d 451 (Tex. 1948).  The statutory authority for the expenditure about which you inquire is found in chapter 34 of the Human Resources Code.  That chapter requires the Texas Department of Human Services (the Department) to establish a fund to assist local communities in meeting the needs of individuals and families for temporary emergency relief.  Hum. Res. Code § 34.003(a).

The services are funded 50 percent with local funds and 50 percent with matching state funds.  The statute authorizes a county commissioners court to apply for a grant to administer the program on behalf of the county.  Id. §§ 34.002-04.  The county must submit to the Department a plan for providing emergency relief, which must include a description of the target population, eligibility criteria

that contains the sources of local matching funds.  Id. § 34.006(a), (b).  The Department shall adopt rules establishing criteria for determining whether a county or other applicant qualifies for a grant-in-aid.  Id. § 34.004 (d). The Department is also required to develop standards and procedures for the program that permit all counties in the state to participate.  Id. § 34.004(f).

The statute is intended to enable local governments to aid needy individuals, including homeless persons.  The legislature has acknowledged that local government and nonprofit programs are presently overburdened and that the inability to adequately assist homeless and needy residents causes family, social, and economic instability, as set out in the purpose clause of chapter 34.

(a)   The legislature finds that:

(1)   economic and demographic changes have created rapid increases in the number of needy persons who are homeless or without other necessities of basic existence;

(2)   local governments and nonprofit service organizations are unable to meet the increased financial burden caused by those changes in various areas of the state; and

(3)   the dramatic nature of the emergency relief needs in various localities has contributed to family instability and threatened the social and economic stability of those communities.

(b)   The intent of this chapter is to serve a public purpose and the goals of the state by providing state money to match local and any federal money available to provide emergency relief to needy persons.

Hum. Res. Code § 34.001.

Section 34.007 establishes procedures and guidelines for counties to follow in determining eligibility and the frequency and duration of benefits under the program.  A county may not set the eligibility level at "less than 75 percent of the federal poverty level based on the Federal Office of Management and Budget Poverty Index in effect at

the time the plan is submitted to the Department." Id. § 34.007(c). Assistance "may include the provision of utilities, food, housing, and clothing to needy persons." Id. § 34.007(d) (emphasis added). Pursuant to section 34.004 of chapter 34, the Department adopted the following rules for provision of housing assistance under the program:

> [T]he [county, other political subdivision, or non-profit corporation] may deliver the following services:
>
> (1) mass shelter -- purchasing cots and blankets and renting space;
>
> (2) emergency rent -- paying for one month only to prevent eviction and to provide housing for the homeless;
>
> (3) mortgage assistance -- paying for one month only to prevent eviction or closure . . . .[1]

40 T.A.C. § 10.4304(b).

Chapter 34 authorizes the provision of temporary, emergency housing assistance. Homelessness is not a prerequisite to assistance. Rather, prevention of homelessness and promotion of stability are primary purposes of the statute's enactment. These purposes are served by the provision of one month's mortgage assistance to a person or family on the verge of homelessness through eviction or foreclosure on their home. This form of assistance allows the family time to take measures to prevent eviction or foreclosure or to find other housing. We do not see that making a mortgage payment is significantly different from making a rent payment for individuals in this situation.

Indigents do not need to be totally impoverished before assistance may be provided. Attorney General Opinion O-2474 (1940). The legislature, in enacting chapter 34, clearly did not intend that a family must be totally destitute in order to qualify for housing assistance. Instead, one

---

1. According to the Department, "closure" is a typographical error in the rule as adopted. The Department interprets the rule as applying to "foreclosure."

specific restriction the legislature places on the adminis- tration of the program is that the eligibility requirement cannot be set lower than at 75 percent of the poverty level established by federal guidelines.

"It is not an invalid delegation of legislative authority to grant to an administrative body the right to make rules to put into effect completed laws." Housing Authority of City of Dallas v. Higginbotham, 143 S.W.2d 79, 87 (Tex. 1940). The Department rule allowing counties to make mortgage payments on behalf of indigent residents directly achieves the stated goal of chapter 34 of the Human Resources Code.

The statutory authority of chapter 34, to be valid, must be consistent with provisions of the Texas Constitution prohibiting expenditures of public funds for private purposes. Article 3, section 52, of the Texas Constitution provides:

> (a)  Except as otherwise provided by this section, the Legislature shall have no power to authorize any county, city, town or other political corporation or subdivision of the State to lend its credit or to grant public money or thing of value in aid of, or to any individual, association or corporation whatsoever, or to become a stockholder in such corporation, association or company.

Article 3, section 51 places a similar prohibition on direct legislative grants to individuals or corporations for private purposes. In our opinion, the expenditure of state and county funds for the purpose of making a single mortgage payment on behalf of an indigent resident is constitu- tionally permissible.

The intent of the provisions of article 3, sections 51 and 52 is to "prevent the application of public funds to private purposes." Byrd v. City of Dallas, 6 S.W.2d 738, 740 (Tex. 1928). On the other hand, expenditures made for the direct accomplishment of legitimate public purposes are not unlawful simply because private business may benefit. Barrington v. Cokinos, 338 S.W.2d 133, 140 (Tex. 1960).

The final determination of what is a proper public purpose is a question for the courts; a legislative declaration of public purpose is to be given great weight. Higginbotham, 143 S.W.2d 79, 83 (Tex. 1940). The

legislative determination will not be overturned absent a court finding of arbitrariness or lack of due process. State v. City of Austin, 331 S.W.2d 737, 743 (Tex. 1960); Attorney General Opinion JM-805 (1987).

In Higginbotham, supra, the supreme court held that the purposes served by the Texas Housing Authorities Law, clearance of slums and construction of low-rent housing, are proper purposes for which use of public funds may authorized. 143 S.W.2d 79 at 85. The stated purpose of diminishing the adverse impact of homelessness articulated in section 34.001 of the Human Resources Code is similar to the legislative statement of purpose considered by the Higginbotham court. See id. at 81, 82. The purposes served by slum clearance and housing development are not rendered constitutionally impermissible because personal gain to some private individual results. Davis v. City of Lubbock, 326 S.W.2d 699 (Tex. 1959). Thus, we do not believe the purposes stated in chapter 34 are per se unconstitutional merely because a property owner or financial institution might ultimately benefit from the receipt of one rent or mortgage payment.

A government entity may contract with a private institution or another political subdivision in order to provide for public or governmental programs for proper public purposes. Attorney General Opinion JM-65 (1983). Whether a particular expenditure which benefits an individual is permissible under the constitution must be determined on a case-by-case basis. Compare Attorney General Opinion JM-103 (1983) (permitting a county to contract for the operation of a recreation center to be used by elderly residents) with Attorney General Opinion MW-22 (1979) (concluding that authorization of utility bill payments on behalf of elderly persons violates the constitution). In order to be constitutionally permissible, an expenditure of public funds must be for a public purpose and must include controls to ensure that the public purpose is carried out. See Attorney General Opinions MW-373 (1981); MW-423 (1982); JM-157 (1984); JM-768 (1987). The expenditures authorized by chapter 34 meet both these requirements.

A public purpose is served when temporary emergency assistance is provided to needy families and individuals living in the community. The obvious societal costs of homelessness make housing development and housing assistance of particular public concern. Expenditures made pursuant to

chapter 34 appear likely to produce savings in existing social welfare and housing programs.

Controls established by chapter 34 ensure that funds authorized by the statute will be used to carry out the public purpose expressed by the legislature. Counties may receive a grant-in-aid only if they provide evidence showing a need for assistance in accordance with the Department's rules. Hum. Res. Code § 34.004(c). The counties must also provide a detailed plan for providing emergency relief. Id. § 34.006 (a), (b). Restrictions on administrative costs, auditing provisions, and reporting requirements also help ensure that the public purpose justifying the emergency assistance program will be carried out.

### S U M M A R Y

A county may make mortgage payments on behalf of indigent residents to prevent eviction or foreclosure as part of a temporary emergency relief program for needy persons approved by the Department of Human Services under chapter 34 of the Human Resources Code.

Very truly yours,

JIM MATTOX
Attorney General of Texas

MARY KELLER
First Assistant Attorney General

LOU MCCREARY
Executive Assistant Attorney General

JUDGE ZOLLIE STEAKLEY
Special Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Karen C. Gladney
Assistant Attorney General