OFFICE OF THE ATTORNEY GENERAL · STATE OF TEXAS

November 21, 2001

The Honorable David Counts
Chair, Natural Resources Committee
Texas House of Representatives
P.O. Box 2910
Austin, Texas 78768-2910

Opinion No. JC-0434

Re: Determination of "actual costs" a hospital district must charge nonindigent district residents and related questions: clarification of Attorney General Opinion JC-0220 (2000) (RQ-0368-JC)

Dear Representative Counts:

On behalf of the Garza County Hospital District (the "District"), which no longer operates its own hospital facility, you ask about contract payments made by the District to a private hospital system to provide medical care services to the District's nonindigent residents.[1] These questions are a follow-up to Attorney General Opinion JC-0220 issued last year in response to a request from you on behalf of the District. As a result of legislation passed in the last legislative session, we conclude that the District must charge nonindigent residents the "reasonable and customary cost of [medical] services" provided rather than their "actual cost." Additionally, we conclude that payment for those charges may be made directly to the District or to the contract medical provider. Finally, we conclude that annual contract payments made by the District to the contract medical provider are not, as a matter of law, an "illegal subsidy." Attorney General Opinion JC-0220 is modified to the extent it suggests that "actual cost" requires a hospital board of directors to include in the amount charged for nonindigent medical care services all possible hospital district costs of providing the services, including capital investments and depreciation.

We begin by providing some background. The District is a county-wide hospital district that was created and established pursuant to article IX, section 9 of the Texas Constitution and its special enabling legislation ("Enabling Act"). See Act of May 17, 1967, 60th Leg., R.S., ch. 502, § 1, 1967 Tex. Gen. Laws 1132. Under the constitutional provision and its Enabling Act, the District is authorized to issue bonds or other obligations to purchase or acquire facilities for hospital purposes; required to assume responsibility for providing medical and hospital care for its needy inhabitants;

---

[1]You do not ask us any specific questions, but refer us to questions posed by W. Calloway Huffaker on the request of the Board of Directors of the Garza County Hospital District. See Letter from Honorable David Counts, Chair, Natural Resources Committee, Texas House of Representatives, to Honorable John Cornyn, Texas Attorney General (Mar. 27, 2001) (on file with Opinion Committee) [hereinafter Request Letter]; Letter from W. Calloway Huffaker, Huffaker Furlow, P.C., to Honorable David Counts (Mar. 20, 2001) (on file with Opinion Committee) [hereinafter District Letter].

and authorized to levy a tax on all taxable property in the District to pay for bond debt service and maintenance and operating expenses.[2]  Additionally, Garza County and any city in the county are prohibited from levying a tax or issuing bonds for hospital purposes or for providing medical care within the District's boundaries.[3]  So, even though the District no longer operates a hospital, it remains responsible for providing hospital and medical care to its needy residents, and it chooses to do so by contracting with a private hospital organization.

In Attorney General Opinion JC-0220, after an extensive examination of article IX, section 9, the Enabling Act, and provisions of the Health and Safety Code applicable to the District, we concluded that: (1) the District is authorized to contract with a private hospital or health system for the operation of a clinic to provide hospital and medical care to the District's needy inhabitants; (2) the District may continue to levy a tax and use the proceeds to make payments under the contract to provide that care; and (3) it may through this contract offer medical care to nonindigent county residents, provided the District charges those persons the actual cost of the services. *See* Tex. Att'y Gen. Op. No. JC-0220 (2000).

Apparently, "[a] controversy has now arisen concerning the interpretation" of the opinion in light of the District's particular contractual arrangement for the provision of medical care services to District residents. *See* District Letter, *supra* note 1, at 1.  The District has leased its facilities to Covenant Hospital ("the Hospital") and contracted with the Hospital to provide medical care services to the District residents. *See id.*  Under the contract, the District pays the Hospital $300,000 annually to provide the medical services. *See id.*  The Hospital, in turn, pays the District approximately $70,000 annually for the lease of the District facilities and equipment and for District employee services. *See id.*  While neither you nor the District informs us of the controversy regarding the contract, we surmise, based on correspondence received from a District board member and a District resident, that some District residents believe that the annual contract payments to the Hospital are excessive or illegal. *See id.*[4]

In view of this controversy, the District now asks:

> 1. Definition of *actual cost* for payment by the non-indigent resident[s] for medical services provided. Is the proportionate cost of the contract with the private hospital system the *actual cost*, or is the

---

[2]*See* TEX. CONST. art. IX, § 9; Act of May 17, 1967, 60th Leg., R.S., ch. 502, §§ 2, 5, 6, 12, 1967 Tex. Gen. Laws 1132, 1133, 1134-35, 1136, 1137; *see generally* Tex. Att'y Gen. Op. No. JC-0220 (2000) at 2-3.

[3]*See id.*

[4]*See also* Letter from Wesley W. Burnett, to Susan Gusky, Chair, Opinion Committee, Office of the Attorney General (Apr. 19, 2001); Letter from Carol Tobias, Garza Hospital District Board Member, to Susan Gusky (Apr. 30, 2001) [hereinafter Tobias Letter] (on file with Opinion Committee) [hereinafter jointly referred to as Resident Letters].

cost of the medical services administered to the non-indigent resident[s] the *actual cost*?

2. Must the payments for actual cost be made directly to the District or may they be paid to the contract medical provider?

3. Is the payment to the medical provider under the contract an "illegal subsidy" benefitting the non-indigent residents of the District?

District Letter, *supra* note 1, at 2 (emphasis in original).

The District, in effect, asks about the application of Attorney General JC-0220's legal conclusions to the terms of its particular contract to resolve an apparently ongoing controversy regarding the necessity or propriety of the District's contractual arrangement. *See* Resident Letters, *supra* note 4; *see also* Tex. Att'y Gen. Op. No. JC-0220 (2000) at 1, n.1 (setting out sources of questions raised regarding the District's authority), at 3 (discussing background to request). The opinion process is ill-equipped to resolve such controversies. Nonetheless, in an effort to provide guidance to the District and to clarify Attorney General Opinion JC-0220, we answer, to the extent we can, the District's questions.

Attorney General Opinion JC-0220's conclusion that the District must charge nonindigent residents the "actual cost" of medical care services provided has been superseded by statute. In the 2001 legislative session, the legislature amended the District's Enabling Act to specifically provide as follows: "The board of directors may provide access to medical care to nonindigent residents of Garza County if the nonindigent residents are charged the reasonable and customary cost of services." *See* Act of May 23, 2001, 77th Leg., R.S., ch. 1115, § 7, 2001 Tex. Gen. Laws 2330, 2334. This provision became effective September 1, 2001. Thus, the District must charge nonindigent residents the "reasonable and customary cost of [medical care] services." What constitutes "reasonable and customary cost" is a determination that must be made by the District's board of directors in the first instance, subject to judicial review for abuse of discretion. *See* Act of May 17, 1967, 60th Leg., R.S., ch. 502, § 4, 1967 Tex. Sess. Law Serv. 1132, 1134 (management and control of District is vested in its board of directors). We cannot, in an attorney general opinion, determine, as a matter of law, how the "reasonable and customary cost" of medical care services must be calculated or what it must include.

While "actual cost" no longer applies to the District's provision of medical care services to nonindigent residents, we take this opportunity to clarify our prior opinion. The District asks whether "actual cost" charged a nonindigent resident must include a proportionate share of the

District's annual contractual payments to the private hospital system.[5] This question, as well as the District's third question regarding "illegal subsidy," appear premised on a view that Attorney General Opinion JC-0220 requires the District to recover from nonindigent residents as "actual cost" the District's full cost of providing medical care services such as the contract payments. We modify Attorney General Opinion JC-0220 to the extent it suggests that "actual cost" *requires* a hospital district board of directors to include in the amount charged for nonindigent resident medical care services all possible hospital district costs of providing the services, including capital investments and depreciation.

Attorney General Opinion JC-0220 deals with the question of whether the District may provide hospital or medical care to nonindigent residents. It concludes that the District may do so, provided the District charges the nonindigent residents the "actual costs" of the services rendered, relying on an earlier opinion of this office, Attorney General Opinion C-382. The latter opinion states:

> It must also be noted that, when a patient has been admitted who is fully able to pay, the Administrator may not permit him to pay less than the full and actual cost of his care and maintenance. An excellent discussion of the effect of failure to charge the full and actual costs when a patient has been found able to pay may be found in Goodall vs. Brite, 54 P.2d 510 (Calif. D.C. App. 1936). Permitting such patients to pay less than the actual cost of their care would constitute a donation of public funds, in contravention of Article III, Section 51, Texas Constitution.

Tex. Att'y Gen. Op. No. C-382 (1965) at 2.

*Goodall v. Brite*, cited in Texas Attorney General Opinion C-382, requires "actual cost" to reflect a governmental entity's "true cost" of providing medical care services, such as capital investments and depreciation. In that case, the California District Court of Appeals held that treating patients for free or charging them only $3.00 per day when those patients could afford available private hospital care exceeded the county's police powers and constituted a gift of public funds. *See Goodall*, 54 P.2d 510 (Cal. Dist. Ct. App., 1936). The court noted that the $3.00 amount charged some nonindigent patients did not take into account "capital investment of several hundred thousand dollars, nor of depreciation." *Id.* at 514. The court also stated that:

> The method used in reaching the daily cost per patient was so inaccurate and unbusinesslike that the result could not reflect the true

---

[5]*See* District Letter *supra*, note 1, at 2 ("Is the proportionate cost of the contract with the private hospital system the *actual cost*, or is the cost of the medical services administered to the non-indigent resident the *actual cost*?") (emphasis in original).

> daily cost to the county of any one patient. This must have resulted in gifts of county money to at least those patients who paid nothing and to those who paid only $3 per day and who were serious operative cases.

*Id.* We do not believe that the *Goodall* court's analysis, incorporated by reference in Attorney General Opinion C-382, applies to hospital districts' provision of medical care services to its nonindigent residents under Texas law.

First, Attorney General Opinion C-382's requirement that the nonindigent residents be charged not less than the "actual costs" for medical care services, including, as it suggests, capital costs, is not derived from article IX, section 9, which does not speak to this issue.[6] Rather, it is based on the prohibition against gifts or grants of public funds in article III, section 51 of the Texas Constitution. *See* Tex. Att'y Gen. Op. No. C-382 (1965) at 2. We believe Attorney General Opinion C-382's construction of article III, section 51 to require a hospital district to recoup essentially every penny spent in providing the nonindigent resident medical care is incorrect, and that its reliance on the California case, *Goodall v. Brite*, is misplaced.

Article III, sections 51 and 52 of the Texas Constitution limit the legislature's authority to appropriate public funds to private individuals and corporations, either directly or by statutes authorizing expenditures by state or local entities. Section 51 provides that the "Legislature shall have no power to make any grants or authorize the making of a grant of public moneys to any individual, association of individuals, municipal or other corporations whatsoever." TEX. CONST. art. III, § 51. Similarly, section 52 prohibits the legislature from authorizing any political corporation or subdivision of the state "to lend its credit or to grant public money or thing of value in aid of, or to any individual, association or corporation whatsoever. *Id.* § 52(a). The purpose of article III, sections 51 and 52 is the same: to prevent the gratuitous application of public funds or resources for private purposes. *See Byrd v. City of Dallas*, 6 S.W.2d 738, 740 (Tex. 1928); *Graves v. Morales*, 923 S.W.2d 754, 757 (Tex. App.–Austin 1996, writ denied). But these provisions do not bar governmental expenditures or use of governmental resources for the direct accomplishment of a legitimate purpose of the political subdivision. *See Byrd*, 6 S.W.2d at 740; Tex. Att'y Gen. Op. No. JM-1255 (1990) at 2 (and authorities cited therein). An expenditure "for a public purpose, with a clear public benefit received in return, does not amount to a lending of credit or grant of public funds in violation of article III, sections 51 and 52." *Edgewood Indep. Sch. Dist. v. Meno*, 917 S.W.2d 717, 740 (Tex. 1995).

---

[6]The hospital district enabling statute at issue in Attorney General Opinion C-382 required a hospital district to collect from those patients who are able to pay for their care "a specified sum per week, in proportion to their financial ability, but such sum shall *not exceed* the actual per capita cost of maintenance." *See* Tex. Att'y Gen. Op. No. C-382 (1965) at 1-2.

Providing hospital and medical care to residents of a hospital district is a constitutionally authorized purpose of a hospital district in this state. *See* TEX. CONST. art. IX, § 9; Tex. Att'y Gen. Op. No. JC-0220 (2000) at 10 (article IX, § 9 contemplates that hospital district will provide medical care to nonindigent residents). Hospital district funds expended for these purposes are expenditures for public purposes; there is no lending of credit or grant of public funds in violation of article III, sections 51 and 52. *See Meno*, 917 S.W.2d at 740. Thus, a hospital district is not *required* by article III, sections 51 and 52 to charge the actual cost of providing medical care to nonindigent residents. Unless a statute—as here—provides otherwise, it is within the discretion of the board of directors of a hospital district to determine, in the first instance, the method for charging nonindigent residents and whether that method serves the hospital district's public purpose. *See, e.g., Cmty. Mem'l Hosp. v. County of Ventura*, 56 Cal. Rptr. 2d 732, 737 (Cal. Ct. App., 1996) (determining that county in offering discounts for medical services to nonindigent patients as revenue generating device did not make "gift" of public funds).

The District also asks: "Must the payments for actual cost be made directly to the District or may they be paid to the contract medical provider?" District Letter, *supra* note 1, at 2. As stated earlier, the District must charge nonindigent residents the "reasonable and customary cost of [medical care] services," rather than the "actual cost." *See* Act of May 23, 2001, 77th Leg., R.S., ch. 1115, § 7, 2001 Tex. Sess. Law Serv. 2330, 2334. Payments for these charges, in our opinion, may reasonably be made directly to the District or to the contract medical provider. Nothing in the District's Enabling Act or another law that we know of requires the payments to be made directly to the District. *Cf.* Tex. Att'y Gen. Op. No. DM-37 (1991) at 1-2 (hospital district's powers and duties are determined by looking at authorizing constitutional provision, its Enabling Act, and provisions of Health and Safety Code applicable to hospital districts generally). The law simply requires the District to charge nonindigent residents the "reasonable and customary cost" of the medical care services provided. Here, those services are provided by the District through its contract with the medical provider. Which entity collects the nonindigent medical care service charges and how they are accounted for under the contract appear to be business or financial determinations entrusted to the District's board of directors in the first instance. *See* Act of May 17, 1967, 60th Leg., R.S., ch. 502, § 4, 1967 Tex. Gen. Laws 1132, 1134 (management and control of District is vested in its board of directors). As long as the nonindigent residents are charged the "reasonable and customary cost" of the services provided, and the amounts collected inure to the benefit of the District in some way, it appears to us legally immaterial which entity physically receives the funds.

Finally, the District asks: "Is the payment to the medical provider under the contract an 'illegal subsidy' benefitting the nonindigent residents of the Districts?" We are somewhat perplexed by this question. Neither the District Letter nor the Resident Letters set out a legal basis for the perceived illegality. But we note that the District's contract with the medical provider states that the District will pay $25,000 "per month to subsidize losses resulting from the operation of Clinic," or $300,000 each year. Rural Health Clinic Operation Agreement, at 3 (Jan. 13, 1998) (attachment to Tobias Letter *supra*, note 4). We are unaware of any authority that would render the annual payments illegal as a matter of law.

Although we are unclear as to the legal theory for the perceived illegality, it cannot be, in our opinion, that the contract payments violate article III, sections 51 and 52 simply because nonindigent residents do not pay a pro rata share of those payments. Again, providing medical care to indigents *and* nonindigent residents is a public purpose of a hospital district. *See supra* at p. 6. An expenditure for the direct accomplishment of a legitimate public purpose is not a lending of credit or grant of public funds in violation of article III, sections 51 and 52. *See supra* at p. 5.

Additionally, we do not believe the contract payments violate article IX, section 9 of the Texas Constitution or the District's Enabling Act. Neither article IX, section 9 nor the District's Enabling Act limits the amount the District may pay under a contract to provide medical care or precludes the District from providing medical care to nonindigent residents pursuant to such a contract.[7] Furthermore, neither provision precludes the District from agreeing to "subsidize" the medical provider's losses in operating the clinic.[8] We note that without the annual payments, it may not be possible for the District to induce an entity to operate a clinic and provide *any* medical care services.

Whether the medical care services provided under the District's contract with the medical provider are necessary, the contractual payments excessive, or the District's particular arrangement a cost-effective method of providing medical care to indigent District residents is a determination involving questions of fact and policy outside the scope of the opinion process.

---

[7]*See* TEX. CONST. art. IX, § 9; Act of May 17, 1967, 60th Leg., R.S., ch. 502, § 5(a), 1967 Tex. Gen. Laws 1132, 1134 (Enabling Act); Act of May 23, 2001, 77th Leg., R.S., ch. 1115, 2001 Tex. Sess. Law Serv. 2330, 2334 (amending Enabling Act).

[8]*See supra* note 7.

## S U M M A R Y

Garza County Hospital District must charge nonindigent residents the "reasonable and customary cost of [medical care] services." Payment for those charges may be made directly to the District or to the contract medical provider. Annual contract payments made by the District to a contract medical provider are not, as a matter of law, an "illegal subsidy."

Attorney General Opinion JC-0220 (2000) is modified by statute.

Yours very truly,

**JOHN CORNYN**
Attorney General of Texas


HOWARD G. BALDWIN, JR.
First Assistant Attorney General

NANCY FULLER
Deputy Attorney General - General Counsel

SUSAN D. GUSKY
Chair, Opinion Committee

Sheela Rai
Assistant Attorney General, Opinion Committee