October 27, 2009

Mr. Bill Segura, Chancellor
Texas State Technical College System
3801 Campus Drive
Waco, Texas 76705

Opinion No. GA-0743

Re: Whether Texas State Technical College (TSTC)
can legally enter into a student loan program with a
private lender, whereby TSTC and the private lender
share the risk of students defaulting on the loans
(RQ-0803-GA)

Dear Mr. Segura:

On behalf of the Texas State Technical College System ("TSTC"), your general counsel has asked for an opinion regarding a private loan proposal to help fund TSTC students' tuition.[1] Under the proposal, a private corporation would "make funding available for private education loans to students attending" TSTC, and "the holder of the loan and TSTC [would] share in the risk of defaults."[2] The Proposal provides, as a hypothetical example, a situation where a lender agrees to provide a loan of $10,000.00 for a TSTC student's tuition. Proposal at 2. A percentage of that money would be distributed outright from the lender to TSTC, and the remainder would be placed in an escrow account. *See id.* If the borrower did not default, the holder of the loan and TSTC would divide the amount in escrow between them. Because of this shared escrow account, TSTC would always be offering these students a reduced tuition. *See id.* However, in the event of a default, TSTC would return "some or potentially all of the funds received from the lender, resulting in a course taught for a reduced tuition, potentially reduced all the way to zero."[3] Based on this Proposal, your general counsel asks, "can [TSTC] risk share in the loans made by a third party lender?" General Counsel Letter.

Your general counsel does not provide us with any additional information about the Proposal, nor does he indicate any specific legal concerns that TSTC has regarding this Proposal. We note at the outset that this office does not approve, review, or comment on the terms of any particular

---

[1]Request Letter at 1 (*available at* http://www.texasattorneygeneral.gov).

[2]Brazos Proposal for Private Loan Program at 1 (attached to Request Letter) [hereinafter Proposal].

[3]Letter from Ray Rushing, General Counsel to TSTC, to Nancy Fuller, Chair, Opinion Committee (June 5, 2009) (on file with the Opinion Committee) [hereinafter General Counsel Letter].

proposed contract in the opinion process. Tex. Att'y Gen. Op. Nos. GA-0078 (2003) at 2, JC-0450 (2002) at 4, JM-0697 (1987) at 6. Therefore, a determination as to whether this particular Proposal is valid and enforceable is outside the scope of the opinion process. Tex. Att'y Gen. Op. No. GA-0252 (2004) at 6 (final determination of whether a contract comports with statutory requirements involves questions of fact and contract interpretation and is beyond the purview of an attorney general opinion). However, we can address general legal principles that may be relevant to whether this Proposal is permitted under the law. Tex. Att'y Gen. Op. No. GA-0176 (2004) at 2.

We first note that article III, sections 50 and 51 of the Texas Constitution forbid the granting of public money and the lending of the state's credit to an individual. TEX. CONST. art. III, §§ 50, 51. Section 51 prevents the gratuitous application of public funds to any individual, but a "transfer of funds for a public purpose, with a clear public benefit received in return, does not amount to a lending of credit or grant of public funds in violation of article III, section[] 51." *Edgewood Indep. Sch. Dist. v. Meno*, 917 S.W.2d 717, 740 (Tex. 1995). "Attorneys general long have interpreted section 51 not to forbid a state agency from expending public funds in a way 'that benefits a private person or entity if the . . . governing body (i) determines that the expenditure serves a public purpose and (ii) places sufficient controls on the transaction to ensure that the public purpose is carried out.'" Tex. Att'y Gen. Op. No. JC-0484 (2002) at 4. The public purpose served by the expenditure must be an authorized public purpose of the political subdivision. *Byrd v. City of Dallas*, 6 S.W.2d 738, 740 (Tex. 1928); Tex. Att'y Gen. Op. No. JC-0434 (2001) at 13. Section 50 similarly prohibits the Legislature from giving or lending, or authorizing "the giving or lending, of the credit of the State in aid of, or to any person, association, or corporation." TEX. CONST. art. III, § 50. Like section 51, section 50 is not implicated if the gift or loan serves a public purpose of the entity expending the funds and includes controls to ensure that the public purpose is accomplished. *See* Tex. Att'y Gen. Op. Nos. GA-0033 (2003) at 8, JC-0489 (2002) at 6.

Although this office has not addressed proposals exactly like that which you put forth, it has analyzed other student financial assistance issues in light of the prohibitions established in article III of the Texas Constitution. *See, e.g.*, Tex. Att'y Gen. Op. No. H-1010 (1977) at 1–2; Tex. Att'y Gen. LA-90 (1975) at 1. For example, in H-1010 this office reviewed a county and city grant "to a medical student in exchange for the student's contractual promise that he [would] serve as the county's health officer," and the grant included an agreement that some of the student's debt would "be discharged in partial consideration for his services." Tex. Att'y Gen. Op. No. H-1010 (1977) at 1. Concluding "that the establishment, staffing and operation of a community medical clinic constitutes a public purpose," this office determined that the financial assistance program presented "no constitutional infirmity." *Id.* at 3–4; *see also* Tex. Att'y Gen. LA-119 (1977) at 2 (concluding that a program to guarantee student loans could constitutionally be established).

In regard to the Proposal at issue, even assuming TSTC's participation in the private loan program serves an authorized public purpose of TSTC, given the limited facts we have regarding the Proposal, we are unable to determine whether adequate controls exist to ensure that the public purpose is met. The TSTC board will have to examine the specific contract at issue and make findings regarding the existence of a public purpose of TSTC and sufficient controls. The board must determine in the first instance, subject to judicial review, whether to accept the Proposal. *See*

Tex. Att'y Gen. Op. No. JM-1091 (1989) at 2 (concluding that a university must determine, in the first instance, whether a public purpose exists and make a finding regarding the same).

Aside from the constitutional questions raised by this Proposal, of additional concern is that the Proposal will require TSTC to offer courses "for a reduced tuition." *See* General Counsel Letter. Chapter 54 of the Education Code governs the tuition and fees charged by an institution of higher education.[4] Section 54.051 of that chapter requires "[t]he governing board of . . . the Texas State Technical College System [to collect] from students registering at the institution tuition or registration fees at the rates prescribed in this section." TEX. EDUC. CODE ANN. § 54.051(b) (Vernon 2006); *see also id.* § 135.52(a) (Vernon Supp. 2009) ("The board [of TSTC] shall collect tuition at the rates provided by law . . . ."). Specifically, the Legislature requires that the following rates be charged for tuition at TSTC:

> Tuition for a resident student registered at the Texas State Technical College System is the greater of $50 or an amount set by the governing board of the system at not less than $16 per semester credit hour. Tuition for a nonresident student registered at the Texas State Technical College System is an amount set by the governing board of the system at not less than $80 per semester credit hour.

*Id.* § 54.051(k) (Vernon 2006).[5]

The Legislature has authorized the governing board of TSTC to reduce the amount of tuition charged to a student to an amount less than the amount otherwise required, but only if certain requirements are met. *Id.* § 54.010(a). Specifically, any tuition reduction must be "part of an institutional policy adopted by [TSTC's board of regents] to: (A) increase the average semester credit hour course load of students . . . ; or (B) improve the retention and graduation rate of students enrolled." *Id.* Prior to offering the reduction, the board must "determine[] that the student is: (A) enrolled in, and making satisfactory progress toward completion of, a degree program offered at the

---

[4]For purposes of chapter 54, TSTC is included in the definition of an institution of higher education. *See* TEX. EDUC. CODE ANN. §§ 54.001(1) (Vernon 2006) ("'Institution of higher education' has the same meaning as is assigned to it by Section 61.003 of this code."); 61.003(7) (Vernon Supp. 2009) ("'Public technical institute' means . . . the Texas State Technical College System."); 61.003(8) (Vernon Supp. 2009) ("'Institution of higher education' means any public technical institute . . . .").

[5]The 2009 General Appropriations Act prohibits institutions of higher education from receiving certain appropriations under the act unless it collects tuition in accordance with requirements of chapter 54 of the Education Code. *See* General Appropriations Act, 81st Leg., R.S., ch. 1424, art. III, § 16, 2009 Tex. Sess. Law Serv. 4481, 4951, *available at* http://www.lbb.state.tx.us/Bill_81/6_FSU/Bill-81-6_FSU_0909.pdf ("No institution of higher education shall receive appropriations through formula funding in this Act unless it collects from each student whose semester credit hours are to be included in formula funding calculations all tuition and all fees in accordance with the installment tuition and fee payment plan provided for by the Education Code, (Chapter 54, as amended) on or before the end of the 20th class day for each regular semester . . . .") (last visited Oct. 20, 2009); *see also* TEX. EDUC. CODE ANN. § 54.004 (Vernon 2006) ("All tuition, local funds, and fees collected by an institution of higher education shall be retained and expended by the institution and accounted for annually as provided in the general appropriations act.").

institution; and (B) enrolled in at least 15 semester credit hours at the institution during the semester or term for which the reduction is offered." *Id.* Furthermore, TSTC is limited in the amount of any tuition reduction that it offers to students. *Id.* § 54.010(c) ("The amount of tuition reduction offered to a student under this section for a semester or term may not exceed the amount of tuition that would have been charged to the student under this chapter for enrollment in three semester credit hours during that semester or term."). While we do not have sufficient information to determine how tuition discounts would occur under the Proposal, to the extent that TSTC would be offering students reduced tuition, such reductions must comply with these provisions, as we find no other authority for TSTC to offer reduced tuition rates.

Finally, we note that "[e]ducational programs wholly or partially financed from state funds are subject to the prior approval or disapproval and continuing review of the coordinating board." *Id.* § 135.04 (Vernon 2002); *see also* 19 TEX. ADMIN. CODE § 11.27 (2009) (Tex. State Technical Coll. Sys., New Program and Course Approval) ("Courses and programs . . . partially financed from state funds are subject to the prior approval" of the Texas Higher Education Coordinating Board.). To the extent that the Proposal falls under this category, we advise you to seek approval from the Coordinating Board before agreeing to it.

In the end, the initial determination of whether the Proposal comports with these or any other limitations under state or federal law is to be made by the TSTC board, subject to judicial and administrative review. Such a determination is beyond the purview of an attorney general opinion. *See* Tex. Att'y Gen. Op. No. GA-0252 (2004) at 6 (junior college district's authority to lease campus land to private foundation involves questions of facts and contract interpretation).

## S U M M A R Y

Article III, sections 50 and 51 of the Texas Constitution forbid the granting of public money and the lending of the state's credit solely to an individual, although expenditures which incidentally benefit private entities are permitted if made for a legitimate public purpose. Texas State Technical College's discharge of student loans under the proffered loan proposal would be constitutional only if made for a legitimate public purpose and if adequate controls existed to ensure that the public purpose is met.

Section 54.051 of the Education Code requires the Texas State Technical College board to collect set tuition and fees from students attending the institution. The Legislature has authorized the board to reduce the amount of tuition charged in certain circumstances, but only if specific requirements are met. If Texas State Technical College discounts students' tuition under the proffered loan proposal, it must ensure that it meets these requirements.

Very truly yours,

GREG ABBOTT
Attorney General of Texas

ANDREW WEBER
First Assistant Attorney General

JONATHAN K. FRELS
Deputy Attorney General for Legal Counsel

NANCY S. FULLER
Chair, Opinion Committee

Virginia K. Hoelscher
Assistant Attorney General, Opinion Committee