

# KEN PAXTON
ATTORNEY GENERAL OF TEXAS

May 16, 2018

The Honorable Vince Ryan
Harris County Attorney
1019 Congress, 15th Floor
Houston, Texas 77002

Opinion No. KP-0208

Re: Whether the Harris County Department of Education may establish a relief fund to provide grant funding to independent school districts located in Harris County impacted by Hurricane Harvey (RQ-0208-KP)

Dear Mr. Ryan:

You ask whether the Harris County Department of Education ("Department") "may establish a relief fund to provide grant funding to independent school districts located in Harris County to assist with recovery efforts after Hurricane Harvey."[1] You tell us that the Department anticipates the "Harvey Relief Fund will be funded with public funds, including tax proceeds generated from the [Department's] countywide equalization tax."[2] Request Letter at 1. You state you believe the Harvey Relief Fund is "within [the Department's] authority to disburse, as it would assist school districts to further develop their collaborative relationships with [the Department] and not be distracted by the fiscal burdens of rebuilding after Hurricane Harvey." *Id.* at 2.

The Department is the last remaining county school administration in Texas. It is governed by former chapter 17 of the Education Code and supported, in part, by property tax revenue collected under former chapter 18 of the Education Code. *See generally* TEX. EDUC. CODE §§ 17.01-App.–18.30-App. (Title 2-Appendix). Education Code section 11.301 authorizes a countywide school district, such as the Department, operating under former chapters 17 and 18[3] on May 1, 1995, to "continue to operate under the applicable law as that chapter existed on that date and under state law generally applicable to school districts that does not conflict with that chapter." *Id.* § 11.301(a). Chapter 18 imposes limits on the Department's tax revenue. "The tax . . . shall never be levied, assessed, or collected for any purpose other than those herein specified,

---

[1]Letter from Honorable Vince Ryan, Harris Cty. Att'y, to Honorable Ken Paxton, Tex. Att'y Gen. at 1 (Jan. 24, 2018), https://texasattorneygeneral.gov/opinion/requests-for-opinion-rqs ("Request Letter").

[2]The Department informs us the public funds anticipated for the Harvey Relief Fund will include the Department's tax revenues, as well as its proceeds from the sale of services. *See* Brief from Sarah W. Langlois, Att'y for Harris Cty. Dep't of Educ., to Virginia K. Hoelscher, Chair, Op. Comm. at 2 (Feb. 23, 2018) (stating that the Harvey Relief Fund would be funded from Department taxes and fees for services) (on file with the Op. Comm.) (hereinafter "Department Brief").

[3]Former chapters 17 and 18 were repealed in 1995. *See* Act of May 27, 1995, 74th Leg., R.S., ch. 260, § 58(a)(1), 1995 Tex. Gen. Laws 2207, 2498.

and for the advancement of public free schools." *Id.* § 18.26-App. (Title 2-Appendix). Further, "[s]uch funds shall be expended . . . for the equalization of educational opportunities . . . and for the payment of administration expense." *Id.* § 18.28-App. (Title 2-Appendix); *see also id.* § 18.30-App. (Title 2-Appendix) (providing that the superintendent's salary and office expenses "shall be paid out of the funds realized from the collection of the tax"). Whether an expenditure of the Department's tax revenues to create the relief fund to aid Harris County school districts in their post-hurricane recovery efforts satisfies these statutory limitations is a determination ultimately for the Department to make in the first instance, subject to judicial review for abuse of discretion. *See Barrington v. Cokinos*, 338 S.W.2d 133, 142–43 (Tex. 1960) ("[A] court has no right to substitute its judgment and discretion for the judgment and discretion of the governing body upon whom the law visits the primary power and duty to act. Of course, if such governing body acts illegally, unreasonably, or arbitrarily, a court of competent jurisdiction may so adjudge, but there the power of the court ends.").

The Department informs us that 20% of its funding derives from tax revenue and 80% from grants and the fees it charges for services it provides. Department Brief at 2. These fees for services are not subject to the limitations in former chapter 18, which apply to only tax revenue. *See* TEX. EDUC. CODE § 18.26-App. (Title 2-Appendix) (applying to the tax herein provided). Yet, all the Department's public funds, whether grants, taxes, or fees, are subject to Texas Constitution article III, section 52(a)'s restrictions on the use of public funds.[4]

Article III, section 52(a) prohibits the expenditure of public funds for private purposes. TEX. CONST. art. III, § 52(a). The provision's purpose is "to prevent the gratuitous grant of [public] funds to any individual, corporation, or purpose whatsoever." *Byrd v. City of Dallas*, 6 S.W.2d 738, 740 (Tex. 1928). Texas courts explain that article III, section 52(a) does not invalidate an expenditure which incidentally benefits a private purpose if it is made for the direct accomplishment of a legitimate public purpose. *Edgewood Indep. Sch. Dist. v. Meno*, 917 S.W.2d 717, 740 (Tex. 1995). Similarly, article III, section 52(a) does not prohibit a political subdivision from transferring public funds to another political subdivision in order to serve a purpose within the powers of the transferring political subdivision. *State ex rel. Grimes Cty. Taxpayers Ass'n v. Tex. Mun. Power Agency*, 565 S.W.2d 258, 265–66 (Tex. Civ. App.—Houston [1st Dist.] 1978, writ dism'd) (holding that payment made by cities to the power agency were not grants, donations, or gratuities, but instead "were payments made for services rendered"). The Texas Supreme Court articulated a three-part test to determine whether an expenditure of public funds satisfies article III, section 52(a). *See Tex. Mun. League Intergov'tl Risk Pool v. Tex. Workers' Comp. Comm'n*, 74 S.W.3d 377, 384 (Tex. 2002). The three-part test requires the public entity to: (1) ensure that the transfer is to "accomplish a public purpose, not to benefit private parties; (2) retain public control over the funds to ensure that the public purpose is accomplished and to protect the public's investment; and (3) ensure that the political subdivision receives a return benefit." *Id.* at 384. The determination whether a particular expenditure satisfies the three-part test is for the Department to

---

[4]You do not provide information about the nature of the grant funds the Department receives. With respect to grant funds, we consider only article III, section 52(a) and do not opine on any limitations that may accompany a particular grant.

make in the first instance, subject to judicial review for abuse of discretion. *See* Tex. Att'y Gen. Op. Nos. KP-0007 (2015) at 2, GA-0843 (2011) at 2.

Regarding the first prong, the Department must reasonably find that the expenditure for the Harvey Relief Fund serves a public purpose of the Department, meaning it is within the Department's powers enumerated in former chapters 17 and 18 as well as the nonconflicting provisions of the Education Code. *See State ex rel. Grimes Cty. Taxpayers*, 565 S.W.2d at 265 (stating that to satisfy the public purpose test for a particular governmental entity, "[t]he purpose for which the . . . payment . . . was made must be within the powers of the entity . . . making the payment"); TEX. EDUC. CODE § 11.301 (providing for the applicability of "state law generally applicable to school districts that does not conflict with" the governing former chapters). Regarding the second and third prongs, the Department may retain public control over the use of its resources by entering into an agreement or contract that imposes an obligation on the recipient to perform a function benefitting the Department. *See* Tex. Att'y Gen. Op. No. KP-0104 (2016) at 2. That same contract could also serve to impose safeguards to ensure, in satisfaction of the third prong, that the Department receives a return benefit. *See id.* To meet the second and third prongs, the Department must reasonably find it will receive a return benefit, and it must exercise control over the funds to ensure the public purpose is accomplished. Accordingly, assuming any tax revenues used meet the statutory requirements of former chapters 17 and 18 of the Education Code, the Department may establish the proposed hurricane relief fund if it determines that the expenditure satisfies all prongs of the *Texas Municipal League* test.

## S U M M A R Y

Under former chapter 18 of the Education Code, the Harris County Department of Education's property tax revenues may be expended only for the advancement of public free schools, the equalization of educational opportunities, administration expenses, and superintendent salary and office expenses.

Assuming any tax revenues used meet the statutory requirements of former chapters 17 and 18 of the Education Code, the Department may use its public funds to establish a Harvey Relief Fund consistent with Texas Constitution article III, section 52(a), if the Department: (1) ensures the expenditure is to accomplish a public purpose of the Department, not to benefit private parties; (2) retains sufficient control over the public funds to ensure the accomplishment of the public purpose; and (3) ensures the Department receives a return benefit.

Very truly yours,

KEN PAXTON
Attorney General of Texas


JEFFREY C. MATEER
First Assistant Attorney General

BRANTLEY STARR
Deputy First Assistant Attorney General

VIRGINIA K. HOELSCHER
Chair, Opinion Committee

CHARLOTTE M. HARPER
Assistant Attorney General, Opinion Committee